IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | **Case No. 2:14-cv-452** |
| **Plaintiff,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | |
| **RONALD E. SCHERER,** *et al*. | : | |
| | : | **Magistrate Judge Kemp** |
| **Defendants.** | : | |

<u>OPINION & ORDER</u>

This matter comes before the Court on Plaintiff United States of America's

Motion to Dismiss the Counterclaim, for an Order Requiring Supplemental Responses to

the Complaint, and for Award of Sanctions (Doc. 23) (hereinafter, "First Motion to

Dismiss"), Motion for Sanctions under Rule 11 (Doc. 41) (hereinafter "First Motion for

Rule 11 Sanctions"), Motion to Dismiss the Amended Counterclaim, for an Order

Requiring Supplemental Responses to the Complaint, and for Award of Sanctions (Doc.

44) (hereinafter, "Second Motion to Dismiss"), Second Motion for Sanctions under Rule

11 (Doc. 58). This matter is also before the Court on the Scherer Defendants' Motion to

Bifurcate Proceedings and/or Stay Discovery (Doc. 73).

For the reasons set forth herein, Plaintiff's First Motion to Dismiss (Doc. 23) is

**MOOT in part** and **DENIED in part**; Plaintiffs First Motion for Sanctions (Doc. 41) is

**DENIED**; Plaintiff's Second Motion to Dismiss (Doc. 44) is **GRANTED in part and**

**MOOT in part**; and Plaintiff's Second Motion for Sanctions (Doc. 58) is **GRANTED in**

**part**. Defendant's Motion to Bifurcate Proceedings and/or Stay Discovery (Doc. 73) is

**MOOT**.

# I.  FACTUAL BACKGROUND

The underlying events relevant to this case began when Defendant's father, Roger L. Scherer, entered into a trust agreement with Bank One dated 1979, and reinstated in 1981 (the "1979 Trust").  Roger Scherer funded the trust with the stock of the family's wholesale magazine distribution business (the "family business").  After Roger Scherer died in April 1982, the Scherer trust was divided into three subtrusts ("family trust"):  (1) a trust for Roger's son, Ronald E. Scherer, Sr. (2) a trust for Roger's daughter, Linda Scherer Talbott ("Talbott"), and (3) a "wife and mother trust" for Roger's surviving spouse and his mother.

The trusts' terms established income beneficiaries with distribution benefits, as well as remainder beneficiaries. The income beneficiaries are the named beneficiaries for each trust. The principal assets conveyed to the trust upon Roger's death consisted of, directly or indirectly, the stock of entities engaged or affiliated with his wholesale magazine, as well as real estate separately owned but used by these companies.

Upon their father's death, and pursuant to their father's desire, Scherer and Talbott became the chief executives in charge of day-to-day operations of the family business.  In addition, in 1985, the original trust advisors resigned, and appointed Scherer and Talbott as successors pursuant to the terms of the trust agreement.  Talbott served as trust advisor until 2002.  Scherer served as trust advisor until the court removed him in 2008.

### A.        Overview of Probate Court Proceedings and Appeal[1]

In a lawsuit that began in December 2004, Bank One Trust Company, N.A. ("Bank One") now JP Morgan Chase Bank, N.A. ("Trustee"), as trustee under a trust agreement with Scherer and other beneficiaries, filed a complaint in probate court to compel Plaintiff to produce information allegedly needed to prepare a final trust accounting, wind up Bank One's trusteeship, and appoint a successor trustee.

In September 2004, Bank One filed a declaratory judgment action against Scherer and the other family-trust beneficiaries in the Franklin County, Ohio, Probate Court ("Bank One litigation") in an effort to compel Scherer to produce the information needed to prepare a final trust accounting, wind up Bank One's trusteeship, and appoint a successor trustee.  In January 2006, Scherer and the other trust-beneficiaries filed a counterclaim against Bank One, asserting eight separate causes of action, including: breach of fiduciary duty, breach of trust agreement, defamation, fraudulent concealment, tortious interference of beneficiaries' right sand interest in trust assets, and a claim for rescission of the 1985 letter concerning management of the Family Business.

In February 2006, Bank One filed a "Further Claim and/or Third–Party Complaint" against Scherer, personally, alleging Scherer breached his fiduciary duty as the person in charge of the family business by failing to provide required information by Bank One, and a conversion claim against Scherer, personally, alleging he had conveyed

---

[1] This Court recently decided a motion for summary judgment in a related case.  *See Scherer v. Wiles*, No. 2:12-cv-1101, 2015 WL 4512393 (S.D.Ohio July 24, 2015).  The Court takes judicial notice of this decision as a public record.  *See See Wyser–Pratte Management Co., Inc. v. Telxon Corp.,* 413 F.3d 553, 560 (6th Cir. 2005) (holding "the court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice" without converting a motion to dismiss to a motion for summary judgment). Therefore, the relevant underlying facts decided therein that are pertinent to the present matter are included in this Opinion and Order.

various trust assets to himself or companies he controlled without informing the trustee or seeking approval.

The probate case was tried by bench trial in August 2007.  The court issued its 60-page decision on May 14, 2008.  *See Bank One Trust Co.*, *N.A. v. Scherer,* No. 430379–C. Bank One sought approval of its accounting, and a judgment in excess of $6.2 million against Scherer, Sr. for conversion of assets.  The court concluded, among other findings, that according to Bank One's accounting, beginning in 1999 Scherer had misappropriated $6,202,623.00 of trust assets over the course of seven years. The court held that Scherer breached his fiduciary duties as an officer and director of the family business and entered judgment against Scherer for $6,202,623.00 plus interest.  It also held that "[a]ny further objections to [Bank One's] final accountings, and any and all claims against [Bank One] arising from or relating to its final accountings, its administration of the Trusts, or any other matters pertaining to the Trusts and Trust Agreement are hereby adjudicated and hereafter barred."

Scherer and the other beneficiaries appealed the judgment against them.  On November 24, 2009, the Ohio court of appeals unanimously affirmed both the $6,202,623.00 judgment against Scherer for improper diversion of trust assets and the dismissal of Scherer's January 2006 counterclaims as a discovery sanction.  *Bank One Trust Co., N.A. v. Scherer,* 2009 WL 4049123 (Ohio Ct.App. Nov. 24, 2009). The appeals court explained that the evidence "was nearly one-sided in support of the probate court's factual conclusions regarding unauthorized transactions."  *Id.* at * 14.  The court reversed, however, the probate court's decision to strike Scherer's co-beneficiaries' counterclaims, reasoning that such sanctions were based "principally and most

4

egregiously on Ronald Sr.'s misconduct during discovery." *Id* at *13. The court further concluded that the decision to strike the beneficiaries' objections to the final accounting was erroneous because it was predicated on the rationale that the objections were a guise for litigating the stricken counterclaims. *Id.* Thus, the appeals court remanded the case for resolution of the all beneficiaries' counterclaims, but Scherer's (although the other beneficiaries' counterclaims were identical in all respects to Scherer's excluded counterclaims), and also for a new final accounting as to all of the beneficiaries, including Scherer. *Id.* at *16.

The probate court held a new trial on the accuracy of Bank One's final accounting and original counterclaims filed by the Wiles firm, with Scherer serving as the beneficiaries' representative on all matters. The court issued its decision on December 1, 2011. *Bank One Trust Co., N.A. v. Ronald E. Scherer,* No. 430379–C, Defendants' Exhibit G. Thus, the trial court approved Bank One's final accounting, resolved all original counterclaims—including Scherer's latter counterclaims alleging Bank One committed fraud on the court—in favor of Bank One, and generally confirmed all of Bank One's actions as trustee as legitimate and appropriate.

### B. Plaintiff's Complaint

Plaintiff United States of America ("United States" or "Plaintiff") commenced this action on May 15, 2014 against Ronald E. Scherer, Ronald E. Scherer Restatement of Trust, PNC Bank (as successor to National City Bank) Trustee, College Properties Limited Partnership, Marsha Jo Scherer (n/k/a Marsha Jo Lustnauer Amicon), Scherer Family Irrevocable Trust, David Thompson, Trustee, Municipal Tax Investment, LLC, and Franklin County Treasurer. Plaintiff brings this civil action to:

5

(a) obtain a judgment for, and collect from the defendant, Ronald Scherer, an unpaid liability for federal income taxes, penalties, interest, and statutory accruals thereon, and for trust fund recovery penalties, and statutory interest thereon;

(b) establish the validity of the liens of the United States under 26 U.S.C. § 6321 upon all of the property and rights to property of the defendant-taxpayer, Ronald Scherer and of alter egos of Ronald Scherer;

(c) enforce the liens of the United States upon the property and rights to property of Ronald Scherer and/or of alter egos of Ronald Scherer in the real property commonly known as 4425-4427 Lowestone Road, Columbus, Ohio 43220 (the "Lowestone Road Property") and in the real property commonly known as 6015 Strome Court, Dublin, Ohio 43017 (the "Strome Court Property") and foreclose the interests and claims of the taxpayer and of all other persons in, or against, that property;

(d) determine the respective interests of the defendants in the Lowestone Road and Strome Court Properties and the relative priority and amount or percentage of distribution that each defendant and the United States shall receive from the proceeds of a Court-ordered public or receiver sale of said properties; and

(e) permit a Court-ordered public or receiver sale of the Lowestone Road and 6015 Strome Court Properties under 26 U.S.C. §7403(c), and complains and alleges as follows.

(*Compl*., Doc. 1 at 1-2). Plaintiff filed this complaint to "reduce to judgment federal income tax and trust fund recovery penalty assessments the IRS made against Scherer." The liability for income tax assessments Plaintiff seeks to recover is "for the years 1990 through 1992, [totaling] $4,778,133.53, plus interest and other accruals as allowed by law from August 26, 2013." Plaintiff claims that the IRS made and based those income tax assessments on the dollar amounts of the income tax deficiencies for the years to which Scherer had stipulated in a May, 2005 decision made by a United States Tax Court after a deficiency proceeding filed in 2003 (the "Stipulated Decision"). The trust fund penalty assessments Plaintiff seeks to recover "are for the 2nd Quarter of 2006, 4th Quarter of 2006, 2nd Quarter of 2008, 3rd Quarter of 2008, 4th Quarter of 2008, 1st Quarter of

2009, and 3rd Quarter of 2009…[totaling]  $41,563.09, plus interest and other accruals as allowed by law from August 26, 2013."  In addition, United States filed the complaint to enforce the federal tax liens on two pieces of residential real estate that the United States contends are titled in the names of alter egos of Scherer.

### C.      Defendant Ronald Scherer's Counterclaim Allegations

Defendant Ronald E. Scherer ("Scherer" or "Defendant") brings a two-count counterclaim pursuant to Federal Rule of Civil Procedure Rule 60 for a Declaratory Judgment (Count I) and for damages under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2672 *et seq*. (Count II).

#### *1. Allegations Related to Administration of the Trust*

According to the allegations made in Defendant's counterclaim, an individual qualified Subchapter-S trust ("QSST") was established in 1981 for Scherer and put on inactive status in 1983.  He alleges that, in 1983, the Trustee of the 1979 Trust, J.P. Morgan Chase & Co. (and its predecessors) (the "Trustee"), negotiated and entered into an estate tax deferral plan with the Internal Revenue Service ("IRS"), pursuant to 26 U.S.C. § 6166, for the taxes due on the closely-held corporations of Roger Scherer's estate.  Defendant claims that not long thereafter, the Trustee recommended to Scherer and another beneficiary, Scherer's sister Linda Scherer Talbott, a plan to reorganize the assets owned by the 1979 Trust prior to distribution.  Specifically, Defendant claims that the Trustee recommended reorganizing the 1979 Trust into "separate, individual income beneficiary trusts" in order to become, and "enjoy the taxpayer benefits of," a QSST.  Defendant characterizes a QSST as "an exclusive IRS code designation for tax treatment of a single beneficiary trust owning the stock of Subchapter-S companies."

Defendant further alleges that the Trustee set up an account (the "'39 Account") and led Scherer to believe that it was a valid QSST, but that the '39 Account "was not created as a valid QSST and became nothing more than a bank account under the auspices of" the 1979 Trust.  Defendant also claims that, during 1983, "unbeknownst to Scherer, the Trustee put the valid trust into inactive status."  Moreover, Defendant alleges that the "reorganization of the assets after the 26 U.S.C. § 6166 deferral is contrary to law" and that the United States "failed to discover Trustee's error in this trust reorganization under 26 U.S.C. § 6166."

Scherer alleges that, while he believed that '39 Account was a valid QSST, he reported Subchapter-S income on his individual income tax return.  Scherer claims that "[a]ll taxes paid were based on invalidly reported earnings of what Scherer believed at the time to be Subchapter-S assets."  Defendant alleges that in both 2007 and 2011, the Trustee prepared a final accounting for the 1979 Trust showing "all assets, originally believed to be distributed to the '39 Account, as held and accounted for by Trustee in the 1979 Trust."  Scherer admits that he accepted Subchapter-S income on his individual tax return, but alleges that he "did so on the advice of the Trustee."

In addition, Defendant alleges that: (1) "the quarterly account statements for the 1979 Trust, prepared by Trustee, show no Subchapter-S income distributed" from the years 1984 to 1999; (2) "the tax returns for the [1979] Trust, prepared by Trustee, show no Subchapter-S income reported" from the years 1984 to 1998; (3) the Trustee "certified to the IRS yearly" that there was no change in structure for the years 1984 to 1998, claiming that "any change in structure would have accelerated the estate tax due and negated the § 6166 installment deferral taxpayer program"; and (4) the Trustee did not

8

file any tax returns for the 1979 Trust for the years 2000 to 2004.  Defendant further alleges that Scherer never received a Schedule K-1 from the 1979 Trust for the years 1984 to 2004, and that he did not receive statements on the 1979 Trust from Trustee for the year 1984 to 2004 or copies of Tax Returns filed.

Scherer's counterclaim alleges various problems with the Trustee's reporting to the IRS for the 1979 Trust, including claims that:  in 2005, Trustee filed two annual tax returns with the IRS for the 1979 Trust with conflicting incomes recorded; in 2006 and 2007, single tax returns were filed for the 1979 Trust, respectively; in 2008, a final tax return was filed for the 1979 Trust that claimed distribution of the assets of the 1979 Trust, "but does not indicate where the assets were distributed to as is required by IRS code for QSST single beneficiary trusts."  Defendant alleges that the failure of the 2008 tax return to indicate the distribution of assets "demonstrat[es] that the [1979] Trust is not a QSST."  Defendant also alleges that he received no assets from this final return distribution in 2008.

### 2. Allegations Related to Probate Court Proceedings

Defendant claims that in 2005, the Franklin County Probate Court informed Scherer "that he should no longer sign as trust advisor the tax returns for the '39 Account," which he alleges he still believed to be a valid QSST at that time.  In May 2008, the Probate Court entered judgment.  On May 22, 2013, The Supreme Court of Ohio denied review of the Probate Court's decision, deeming it a final judgment.

### 3. Count I of Defendant's Counterclaim

In Count I of Defendant's counterclaim, Defendant asks the Court to vacate or amend a judgment of the Tax Court under Federal Rule of Civil Procedure 60(d) ("Rule

60(d)"). Specifically, Defendant asks this Court to enter an order declaring void the Stipulated Decision Scherer entered into with the IRS in 2005 concerning Scherer's personal tax liability from 1990 to 1992 pursuant to Rule 60(d).

Defendant characterizes Plaintiff's claim against Scherer in this action as one based on the validity of the Stipulated Decision, as Plaintiff is seeking to enforce and collect on the same. Defendant alleges that the Stipulated Decision is "based on the assumption – thereafter discovered to be a wrong assumption - that Scherer owed taxes personally on certain S-Corp income earned in a [QSST] for which he was the beneficiary." Scherer alleges that he can only be personally liable for the income tax if the assets generating the income were held in a QSST; if the assets were not owned by his QSST, he maintains, then no income was earned and thus he owed no corresponding taxes.

Defendant claims that "recently-discovered new evidence" demonstrates that the assets generating the income on which the United States seeks to hold Scherer personally liable in this action were not held in a QSST for Scherer's benefit. This "new evidence," Defendant claims, "provides a valid defense to the original claims brought by the IRS in Tax Court that led to the Stipulated [Decision]." Scherer alleges that he was not able to benefit from that defense at the time of the Stipulated Decision "due to mistake and fault of Trustee."

Defendant alleges that the new evidence that was introduced by the Trustee at the Probate Court proceedings and adopted by the Probate Court, which Defendant claims demonstrates that the 1979 Trust held, and has always held, the assets which generated the income and tax liability for which the United States now seeks to hold Defendant

10

personally liable.  "In other words," Defendant alleges, "the new evidence on which the Final Probate Decision is based, demonstrates that the [1979] Trust is not a QSST and by law cannot hold assets in a way that [Scherer] could be personally liable for the income."

Scherer maintains that he "was not at fault or negligent in any way" and "continued to labor under the misapprehension that he in fact still had a QSST for his benefit as a result of Trustee's conduct."  Defendant claims that "in reality" the '39 Account was not a QSST, and so in 2005, at the time he signed the Stipulated Decision, both he and the IRS were "mistaken concerning the existence of a QSST, and therefore his personal liability for the income tax actual[ly] never existed."

Scherer alleges that he "never" would have agreed to the Stipulated Decision with the IRS "if he had known that the [1979] Trust was obligated to pay the taxes on the income at issue, rather than [Scherer] himself."  In short, Defendant alleges that "both sides to the settlement were mistaken on the facts."  Defendant ultimately alleges that Scherer "should not be held personally liable for a QSST's S-Corp income tax which both he and the IRS mistakenly believed existed when the assets were held as C-Corporations in the 92' Trust, which by law cannot be a QSST, as found by the 2013 Final Probate Decision."  In addition, Defendant alleges that "the '92 Trust is in the process of filing amended federal estate tax returns for the years 1984 to 2013, which will demonstrate that Scherer does not own Subchapter-S Income tax."  Defendant argues that it "would be inequitable to hold Ron personally liable for the Stipulated Settlement in light of the Final Probate Decision and the evidence on which it is based, that "[n]o adequate recourse to challenge the Stipulated Settlement exists in law;" and that the Stipulated Settlement ought not, in equity and good conscience, be enforced.

*4. Count II of Defendant's Counterclaim*

In Count II, Defendant claims that the United States, through the Department of the Treasury's Office of the Comptroller of Currency (the "OCC"), "acted arbitrarily and capriciously by failing to regulate the Trustee thus causing harm to Scherer." Specifically, Defendant claims that the United States "failed to regulate Trustee through the [OCC], by acting arbitrarily and capriciously in failing to properly regulate the trust department of Trustee, a national bank." Defendant further alleges that the "failure to regulate concerns 24 years of massive errors and omissions committed by the Trustee in [his] fiduciary capacity for [Scherer]."

Defendant claims that the OCC acted arbitrarily and capriciously by failing to follow its regulations "in relation to its actions as regulator of the Trustee of the [1979] Trust." According to Defendant, if the OCC would have followed its regulations, "it would have discovered the numerous improper transactions that the Trustee undertook or failed to take." Further, Defendant alleges that "the OCC was well aware of the trust administration issues occurring with the [1979] Trust, as detailed in an internal memorandum referencing [its] contact . . . as far back as 1989." Defendant also maintains that the OCC failed to carry out its duties to examine national banks' trust departments' reports in order to regulate the Trustee for the years 1983 through 1999 and 2005 through 2008, "thereby by acting in an arbitrary and capricious manner."

In addition, Scherer claims that, as a result of the OCC's "arbitrary and capricious conduct . . . in regulating and investigating Trustee," he has suffered $4,778,133.53 in damages and "injury or loss of property." He also claims that "if the OCC would have not acted arbitrarily and capriciously, then Trustee would not have committed gross

negligence and the U.S. would have been paid $22,792,210.89 in C-corporation taxes."
Scherer claims that his "injuries were caused by the arbitrary and capricious conduct
and/or wrongful acts and/or omissions of the U.S., specifically the OCC who were
charged with investigating regulating, operating, auditing, and enforcing state law as to
Trustee for all years of the trusts 1979 to 2008."  Defendant further claims that
"[Scherer's] injuries arose under circumstances where the OCC, if a private person,
would be liable to Ron in accordance with the laws of Ohio where the arbitrary and
capricious conduct and/or wrongful acts and/or omissions of the OCC's employees
occurred."

### 5. Defendant's Prayer for Relief

Defendant prays for the following relief from the Court.  First, under Count I, "in
equity and pursuant to its FRCP 60 powers," he asks that the Court set aside the
Stipulated Decision, and (1) declare that Ronald E. Scherer is not liable for the tax
liability mistakenly consented to in the Stipulated Decision; and (2) declare the U.S. is
not entitled to seek enforcement of the Stipulated Decision.  Second, under Count II,
Defendant asks this Court to find Plaintiff liable to Scherer for: (1) damages in the
amount of $4,778,133.53; (2) post-judgment interest at the statutory rate; (3) reasonable
attorneys' fees and costs, pursuant to 28 U.S.C. § 2678; and (4) further and additional
relief as this Court deems just and proper.

## II.      PROCEDURAL BACKGROUND

Plaintiff commenced this action on May 15, 2014.  (*See Compl.*, Doc. 1).  On
August 8, 2014, Defendant filed his Answer to Complaint, Affirmative Defenses, and
Counterclaim.  (Doc. 16).

**A. Plaintiff's First Motion to Dismiss and Corresponding First Motion for Rule 11 Sanctions**

On October 10, 2014, Plaintiff filed its First Motion to Dismiss, (Doc. 23), and corresponding Memorandum in Support, (Doc. 24).  In addition to requesting dismissal of Defendant's Counterclaim, Plaintiff's First Motion to Dismiss also moved the Court for: (1) an order requiring Defendant to supplement its Answer; and (2) an award of sanctions under 28 U.S.C. §1927, arguing that Defendant's counterclaim was frivolous and made for the purpose of delay.  On November 21, 2014, Plaintiff also filed its First Motion for Rule 11 Sanctions, as an alternative basis for the Court to grant an award of sanctions to Plaintiff for Defendant's allegedly frivolous Counterclaim.  (Doc. 41; *see also Mem. in Support*, Doc. 42).

On November 3, 2014, Defendant filed its Response to Plaintiff's First Motion to Dismiss, (Doc. 33), and its Amended Answer to Complaint, Affirmative Defenses, and Counterclaim, (Doc. 34), (the "Amended Answer" or "Amended Counterclaim").  Plaintiff filed a Reply on November 25, 2014, (Doc. 46).  Plaintiff's First Motion to Dismiss is fully briefed and ripe for review.

On December 15, 2014, Defendant provided its Response to Plaintiff's First Motion for Rule 11 Sanctions, (Doc. 56).  Plaintiff replied on December 29, 2014.  Plaintiff's First Motion for Rule 11 Sanctions is ripe for review.

**B. Plaintiff's Second Motion to Dismiss and Corresponding Second Motion for Rule 11 Sanctions**

On November 25, 2014, Plaintiff filed its Second Motion to Dismiss, moving this Court to dismiss Defendant's Amended Counterclaim, and again seeking an order requiring Defendant to supplement its Amended Answer and requesting sanctions under 28 U.S.C. §1927.  (Doc. 44; *see also Mem. in Support*, Doc. 45).  Soon thereafter, on

December 18, 2014, Plaintiff filed its Second Motion for Rule 11 Sanctions, (Doc. 58; *see also Mem. in Support*, Doc. 59). Once again, Plaintiff's requested sanctions, either under §1927 or, alternatively, under Rule 11, on the grounds that Defendant's Amended Counterclaim was frivolous and imposed to delay the proceedings.

Defendant filed its Response to the Second Motion to Dismiss on January 16, 2015, (Doc. 69); Plaintiff replied on April 10, 2015, (Doc. 94). This matter is fully and extensively briefed, and thus ripe for the Court's review.

Defendant filed its Response, opposing Plaintiff's Second Motion for Rule 11 Sanctions on January 16, 2015, (Doc. 66). Plaintiff replied on April 10, 2014, (Doc. 95). This matter, too, is ripe for this Court's review.

C. **Scherer Defendants' Motion to Bifurcate Proceedings and/or Stay Discovery**

On February 9, 2015, Defendants jointly filed a Motion to Bifurcate Proceedings and/or Stay Discovery, (Doc. 73). Defendants request that this Court enter an order bifurcating Count I of Defendant's Amended Counterclaim from the rest of the action, or structure discovery such that discovery related to Count I of the Amended Counterclaim could occur first, until the resolution of Plaintiff's Second Motion to Dismiss. Plaintiff has responded, (Doc. 96), and Defendants have filed their reply, (Doc. 101); thus this matter also is ripe for review.

### III. STANDARDS OF REVIEW

#### A. Rule 12(b)(1)

A federal district court's basis for subject matter jurisdiction over a dispute may be challenged by filing a motion under Federal Rules of Civil Procedure 12(b)(1). *See Rogers v. Stratton Indus.,* 798 F.2d 913, 915 (6th Cir. 1986). Subject matter jurisdiction

may be challenged at any time by any party, and the court itself may dismiss a case where it decides that it lacks subject matter jurisdiction. *Ogle v. Church of God,* 153 Fed.Appx. 371, 374 (6th Cir. 2005) ("The existence of subject matter jurisdiction may be raised at any time, by any party, or even *sua sponte* by the court itself.").

The Court must first decide whether it has subject matter jurisdiction. *City of Heath, Ohio v. Ashland Oil, Inc.*, 834 F.Supp. 971, 975 (S.D.Ohio 1993) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990)); Fed.R.Civ.P. 12(b)(1). Plaintiff bears the burden of proving jurisdiction when subject matter jurisdiction is challenged under 12(b)(1). *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986).

Motions under Rule 12(b)(1) "are categorized as either a facial attack or a factual attack." *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir.2012). A factual attack challenges "the factual existence of subject matter jurisdiction." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In such challenges, the Court may "weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012). No "presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996); *see also Ritchie,* 15 F.3d at 598. The court may allow "affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

In contrast, a facial attack is "a challenge to the sufficiency of the pleading itself." *Ritchie*, 15 F.3d at 598. Such a challenge is resolved under the familiar 12(b)(6) standard. *Carrier Corp.*, 673 F.3d at 440. Thus, the Court must take the material allegations in the Complaint as true, and construe them in the light most favorable to the non-moving party. *Ritchie,* 15 F.3d at 598; *see also Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325.

## B.        Rule 12(b)(6) – Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of an action for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Thus, the Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted).

Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But the complaint must "'give the defendant fair notice of what the claim is, and the grounds upon which it rests.'" *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Likewise, a plaintiff is required to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In short, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level."  *Id*.  It must contain "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

A claim succeeds in being "plausible on its face" when it contains sufficient factual content to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  This is, the Court has made clear, "not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  It is not enough that a complaint "tender[ ] 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id*.  (quoting *Twombly*, 550 U.S. at 557).  Threadbare "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.  (citing *Twombly*, 550 U.S. at 555).  Nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation."  *Twombly*, 550 U.S. at 555.

### C.    28 U.S.C. § 1927 Sanctions

Chapter 28 U.S.C. § 1927 allows for sanctions of attorneys' fees to be awarded in certain instances.  It states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  The Sixth Circuit has construed "'vexatiously multiplying proceedings' to include conduct where 'an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly

18

obstruct the litigation of non-frivolous claims.'" *Shepherd v. Wellman,* 313 F.3d 963, 969 (6th Cir. 2002) (quoting *Jones v. Cont'l Corp.,* 789 F.2d 1225, 1232 (6th Cir. 1986)). In addition, § 1927 sanctions "are appropriate where an attorney has engaged in some sort of conduct that, from an objective standpoint, falls short of the obligations owed by the member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Id.* (internal quotation marks omitted) (citing *Holmes v. City of Massillon,* 78 F.3d 1041, 1049 (6th Cir. 1996)).

### D. Rule 11 Sanctions

Under Federal Rules of Civil Procedure Rule 11, when a pleading is submitted to the court, a party or counsel certifies to the court that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed.R.Civ.P. 11(b). The standard for determining whether to impose sanctions is one of objective reasonableness. *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 517 (6th Cir. 2002) (recognizing that "the imposition of Rule 11 sanctions requires a showing of 'objectively unreasonable conduct' ") (*quoting United States v. Kouri–Perez*, 187 F.3d 1, 8 (1st Cir. 1999)); *Union Planters Bank v. L & J Development Co., Inc.*, 115 F.3d 378, 384 (6th Cir. 1997) (finding that the test for the imposition of

Rule 11 sanctions is "whether the individual's conduct was reasonable under the circumstances") (citation omitted).  In determining whether sanctions are warranted under Rule 11, a district court "should examine whether an 'attorney's conduct was reasonable under the circumstances."  *Runfola & Assoc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 372 (6th Cir.1996) (quoting *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 958 (6th Cir. 1990)).

Under Rule 11(b)(2), an attorney may violate Rule 11 by filing a pleading containing a claim that is not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  For a legal position to be frivolous under Rule 11, "it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Neighborhood Research Inst. v. Campus Partners for Comm. Urban Dev.,* 212 F.R.D. 374 (S.D.Ohio 2002) (quoting *Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.,* 186 F.3d 157, 167 (2d Cir.1999)); *see also Waste Mgmt. Inc. v. Danis Indus. Corp.*, No. 3:00-CV-256, 2014 WL 4559228, at *5 (S.D. Ohio Sept. 12, 2014).

Rule 11 was adopted to "require litigants to 'stop-and-think' before initially making legal or factual contentions."  Fed.R.Civ.P. 11 (advisory committee notes) (1993 Amendments).  The rule's focus is narrow; it is concerned only with whether the attorney believes "on the basis of reasonable inquiry that there is a reasonable basis in law and fact for the position taken and that the paper is not filed for an improper purpose" at the time that the paper is signed.  *Jackson v. Law Firm of O'Hara, Ruberg, Osborne & Taylor,* 875 F.2d 1224, 1229 (6th Cir. 1989).

If the Court determines that Rule 11(b) has been violated, the Court may impose appropriate sanctions on the attorneys or parties who violated the Rule or who are responsible for the violation. *See* Fed.R.Civ.P. 11(c). Rule 11 provides that a sanction "may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed.R.Civ.P. 11(d).

## IV.    ANALYSIS

### A.    Plaintiff's First Motion to Dismiss

Because Defendant filed an Amended Answer and Counterclaim, Plaintiff's First Motion to Dismiss, which sought to dismiss Defendant's original Counterclaim and requested supplementation of Defendant's original Answer, is MOOT in part. *See Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 617 (6th Cir. 2014) ("Generally, amended pleadings supersede original pleadings."); *see also* 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed.2010) ("Once an amended pleading is interposed, the original pleading no longer performs any function in the case and any subsequent motion made by an opposing party should be directed at the amended pleading."). The Court will still consider the portions of Plaintiff's First Motion to Dismiss that request sanctions under 28 U.S.C. §1927, *infra*.

### B.    Plaintiff's Second Motion to Dismiss Defendant Scherer's Amended Counterclaim

#### 1.  Count I

Plaintiff argues Count I of Defendant's Amended Counterclaim must be dismissed, for at least two reasons. Plaintiff first argues that Defendant's request for

relief from the Stipulated Decision, determining deficiencies in his income taxes for 1990

through 1992, is barred by the doctrine of *res judicata* because the Stipulated Decision is

conclusive as to all contentions he raised or could have raised challenging the decision.

In addition, Plaintiff argues that Defendant did not sufficiently plead the requirements to

state a claim under Rule 60(d).[2]

In response, with respect to Count I, Defendant argues that he sufficiently pleads

all the elements of a counterclaim for an independent action in equity under Rule 60(d),

permitted and that Plaintiff's arguments concern issues of fact.  Specifically, Defendant

argues that he meets the requirements of Rule 60(d) by alleging that:

- "The stipulated settlement should not, in equity and good conscience, be enforced because [Scherer] had good reason to believe that he was liable for the tax underlying the Stipulated [Decision], but was mistaken for reasons outside his control."

- "The fact that [Scherer] cannot be personally liable for all income tax of corporations with C corp status is a valid defense to the proceedings leading to the Stipulated [Decision] because, as revealed by the Probate Decision's final accounting, assets on which he paid S corp income were held in a non-QSST trust that cannot, as a matter of law, hold Subchapter S corporations."

- "He and the IRS were mistaken as to nature of the corporations until the Trustee's final accounting was submitted to the Probate Court, which prevented Ron from obtaining the benefit of his defense."

- "[Scherer] is not at fault when he mistakenly believed the asset corporations were in a QSST with S corp status generating income tax for which he could personally be liable, because he held a reasonable belief to the contrary based on discussion with and the conduct of the trustee and the corporations themselves."

---

[2] Plaintiff's Second Motion to Dismiss also spends significant time discussing why Count I must be dismissed because it does not meet the requirements of Rule 60(b).  Plaintiff addressed the elements of a Rule 60(b) claim, it stated, because it believed that Defendant's Amended Counterclaim did not identify the subsection of Rule 60 under which the claim was made.  Because Plaintiff is incorrect, and Defendant's Amended Counterclaim and briefing make clear that Defendant brings Count I under Rule 60(d), this Court will not address Plaintiff's arguments related to Rule 60(b).  In any event, any claim brought by Defendant under Rule 60(b) would be barred by the applicable one year statute of limitations.  *See* Fed.R.Civ.P. 60(c).

- "That no adequate remedy at law exists, because [Scherer] had no recourse before the Tax Court pursuant to its rules and because it is not a court sitting in equity."

(Def. Mem. in Opp.).  Defendant also argues that the doctrine of res judicata does not bar a Rule 60(d) action, and that Scherer could not have availed himself of relief in the Tax Court even if he was required to do so.

### a.  Relief under Rule 60(d)

Rule 60 provides for "Relief from a Judgment or Order" by motion, under Rule 60(b), or by independent action, under Rule 60(d).  *Mitchell v. Rees*, 651 F.3d 593, 594-96 (6th Cir. 2011).  Subsection (d) is commonly referred to as Rule 60's "savings clause."  It grants a court the power to:

(1)  entertain an independent action to relieve a party from a judgment, order, or proceeding;

(2)  grant relief under 28 U.S.C. § 1655 to a defendant who was not personally notified of the action; or

(3)  set aside a judgment for fraud on the court.

Fed.R.Civ.P. 60(d).[3]

A discussion of the history of Rule 60 and its elements by the Northern District of Alabama is instructive here:

Prior to 2007, Rule 60(b) included a savings clause that allowed a party to obtain relief either by a motion or by an independent action. FED. R. CIV. P. 60(b) (2006). The 2007 Amendments moved a significant portion of Rule 60(b) to the newly created 60(c), (d), and (e). The savings clause allowing an independent action is now located in Rule 60(d), and the Advisory Committee Notes to the 2007 Amendments specifically note that "[r]elief continues to be available only as provided in the Civil Rules or by independent action." Fed.R.Civ.P. 60(b) advisory committee's note. The

---

[3] Because Defendant does not claim that he was not notified of the action against him or that the Stipulated Decision should be set aside for fraud on the Court, the Court determines that he brings Count I under Rule 60(d)(1).

text of the current Rule 60(d) states: "This rule does not limit a court's power to: (1) entertain an independent action to relieve a party from a judgment, order, or proceeding...."

The 2007 changes were intended to be stylistic only, and courts have consistently applied the jurisprudence surrounding Rule 60(b) independent actions to Rule 60(d) independent actions. *See Day v. Benton,* 346 Fed.Appx. 476 (11th Cir.2009) (applying key Supreme Court and Eleventh Circuit precedent interpreting Rule 60(b) to Rule 60(d)); *see also Jackson v. Danberg,* 656 F.3d 157 (3d Cir.2011); *Gottlieb v. S.E.C.,* 310 Fed.Appx. 424 (2d Cir.2009); *Marcelli v. Walker,* 313 Fed.Appx. 839 (6th Cir.2009); *Sindar v. Garden,* 284 Fed.Appx. 591 (10th Cir.2008). Therefore, the court will apply both pre–2007 Rule 60(b) precedent and post–2007 Rule 60(d) precedent, referring to them both as simply a "Rule 60 independent action."

. . .

The Supreme Court also addressed the topic of Rule 60 independent actions in *United States v. Beggerly,* 524 U.S. 38, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998). According to the Court: "Independent actions must, if Rule 60(b) is to be interpreted as a coherent whole, be reserved for those cases of 'injustices which, in certain instances, are deemed sufficiently gross to demand a departure' from rigid adherence to the doctrine of res judicata." *Id.* at 46, 118 S.Ct. 1862. The Court summed up the standard by stating that "an independent action should be available only to prevent a *grave miscarriage of justice.*" *Id.* at 47, 118 S.Ct. 1862 (emphasis added).

…

More recently, in *Solomon v. DeKalb County, Georgia,* the Eleventh Circuit again addressed Rule 60 independent actions. 154 Fed.Appx. 92 (11th Cir.2005). The Court observed that the Rule 60 independent action gives the court "the power to set aside a judgment whose integrity is lacking," but noted that what the rule and "these independent actions *do not* provide is a means for litigants to obtain the district court's reconsideration of the claims and defenses its judgment adjudicated." *Id.* at 93 (emphasis in original). The Court further stated: "Relief under this clause ... is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances. The party seeking relief has the burden of showing that absent such relief, an 'extreme' and 'unexpected' hardship will result." *Id.* (quoting *Griffin v. Swim–Tech Corp.,* 722 F.2d 677, 680 (11th Cir.1984)).

*Armour v. Monsanto Co.*, 995 F. Supp. 2d 1273, 1279-80 (N.D. Ala. 2014) *aff'd sub nom.*

*Tolbert v. Monsanto Co.*, No. 13-15621, 2015 WL 5172854 (11th Cir. Sept. 4, 2015)

The Sixth Circuit has determined that the "indisputable elements" of an

independent action under Rule 60(d)(1) are:

> (1) a judgment which ought not, in equity and good conscience, to be
> enforced; (2) a good defense to the alleged cause of action on which the
> judgment is founded; (3) fraud, accident, or mistake which prevented the
> defendant in the judgment from obtaining the benefit of his defense; (4)
> the absence of fault or negligence on the part of the defendant; and (5) the
> absence of any adequate remedy at law.

*Barrett*, 840 F.2d 1259, 1263 (6th Cir. 1987) (citing 11 C. Wright & A. Miller, Federal

Practice & Procedure § 2868, at 238 (1973), and *National Surety Co. v. State Bank,* 120

F. 593, 599 (8th Cir.1903)). The test is conjunctive.

Moreover, under Rule 60, an independent action is "available only to prevent a

grave miscarriage of justice." *United States v. Beggerly*, 524 U.S. 38, 47, 118 S.Ct. 1862,

141 L.Ed.2d 32 (1998); *accord Pickford v. Talbott*, 225 U.S. 651, 657, 32 S.Ct. 687, 56

L.Ed. 1240 (1912) (available when enforcement of the judgment is "manifestly

unconscionable"); *Barrett*, 840 F.2d at 1263 ("Relief pursuant to the independent action

is available only in cases 'of unusual and exceptional circumstances.'" (quoting *Rader v.

Cliburn,* 476 F.2d 182, 184 (6th Cir. 1973))). A "grave miscarriage of justice" is a

"stringent" and "demanding" standard. *Mitchell*, 651 F.3d at 595 (citing *Gottlieb v.

S.E.C.*, 310 Fed.Appx. 424, 425 (2d Cir. 2009); *Wise v. Kastner*, 340 Fed.Appx. 957, 959

(5th Cir. 2009)). Indeed, "[r]elief from a judgment through an independent action under

Rule 60(d)(1) "is appropriate only in cases 'of unusual and exceptional circumstances.'"

*Rodriguez v. Honigman Miller Schwartz & Cohn LLP*, 465 F. App'x 504, 507 (6th Cir.

2012).

The essential task for this Court in the present case, then, is to evaluate Defendant's allegations in Count I in light of the five "indisputable elements" of an independent action under Rule 60(d). In conducting this review, the Court must review the elements through the lens of the stringent "grave miscarriage of justice" standard that the Supreme Court set out in *Beggerly* for Rule 60 independent actions and the Sixth Circuit's determination that relief under Rule 60(d) is only appropriate in "unusual and exceptional circumstances." After conducting such a review, this Court cannot find that Defendant has stated a claim under Rule 60(d) in Count I of his Amended Counterclaim, and therefore Count I will be dismissed.

Because this Court finds that Plaintiff does not plead adequately elements one, four, and five of the five conjunctive elements required to state a Rule 60(d)(1) claim, Count I of Defendant's Amended Counterclaim must be dismissed. The Court will discuss each element *seriatim*.

### i. Element One

Count I does not meet the first element required for an independent action under Rule 60 (d)(1). In analyzing the first element – "a judgment which ought not, in equity and good conscience, to be enforced" – the Court examines the reasons why Defendant seeks to overturn the Stipulated Decision, as well as the facts surrounding the underlying matters in this litigation. This element, which is broadly focused on equity, particularly must be considered in light of the "grave miscarriage of justice" standard. Defendant argues that 'equity and good conscience' demonstrate that the Stipulated Decision should not be set aside because he would not have entered into it but for a mistaken understanding of the status of assets being held in the 1979 trust.

An examination of the underlying facts does not reveal that good conscience and equity weigh in favor of precluding enforcement of the Stipulated Decision, for several reasons.[4]   First, Defendant was represented by counsel at the time he entered in to the Stipulated Decision.  There is no indication that he was unable to understand the settlement agreement he entered into with the IRS or that he otherwise felt the proceedings were unfair at that time.  In addition, although Defendant contends that "recently-discovered new evidence" necessitates this claim, (*see* Doc. 34 at ¶ 32), Defendant makes no allegation that he could not have discovered his true tax liability for 1990 through 1992 during the proceedings that led to the Stipulated Decision.  *See, e.g.*, *Rimi v. Obama*, 60 F. Supp. 3d 52, 57 (D.D.C. 2014) *aff'd*, 608 F. App'x 4 (D.C. Cir. 2015) (finding that, in an independent action seeking relief under Rule 60(d) based on newly-discovered evidence, the petitioner must meet the same substantive requirements as govern a motion for like-relief under Rule 60(b) – that is, he must show that the evidence was not, and could not by due diligence have been, discovered in time to produce before the order issued, that it would not be merely cumulative, and that it would probably lead to a judgment in his favor.  (internal quotations and citations omitted)). And, in fact, Scherer was serving as a trust advisor both at the time of the disputed tax liability (1990-1992) and at the time the Tax Court proceedings took place.  Therefore, it is apparent that Defendant was intimately involved in the 1979 Trust and could have

---

[4] In reviewing a motion to dismiss, the Court can consider public records and documents that are integral to a complaint without converting the motion to a motion for summary judgment, and thus it will consider the decisions and exhibits from the administrative proceedings in this matter.  *See Wyser–Pratte Management Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005) (holding "the court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice"); *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360–361 (6th Cir. 2001) ("Court may consider the full text of the SEC filings, ... and statements 'integral to the complaint,' even if not attached, without converting the motion [to dismiss] into one for summary judgment...."). Therefore, the Court will consider the Stipulated Decision of the Tax Court in this case.

gained an understanding of the legal status of the assets at issue.  In any case, Defendant does not demonstrate in Count I that the evidence could not have been discovered at that time.

Moreover, the timing of the filing of this claim does not lead the court to believe that equity and good conscience require that the judgment be declared void.  Courts have found that "[e]ven though Rule 60(d) allows an action to be brought outside of the one-year limitation imposed on portions of Rule 60(b), the timing of the action must still be reasonable."  *Armour*, 995 F.Supp.2d at 1282.  Contrary to Defendant's assertions, no new facts or circumstances have arisen recently in this case that makes Defendant's challenge particularly appropriate now.  In Count I, Defendant alleges that he did not have the facts necessary to challenge the Stipulated Decision until all appeals were resolved in the Probate Court proceedings related to the 1979 Trust, which did not conclude until the Supreme Court of Ohio denied review of the Probate Court action on May 22, 2013.  In his briefing, his story changes slightly and he claims that he did not have adequate facts until "late 2007."  Even if this Court agrees with Defendant, however, this claim still was not raised until over a year later after the Probate Court proceedings were closed.  Such a delay weights against Defendant's claim that he has demonstrated that equity and good conscience weigh in favor of this Court voiding the Stipulated Decision.

ii.    Elements Two and Three

Element two of an independent action under Rule 60(d)(1) asks whether Plaintiff has a good defense to the alleged cause of action on which the judgment is founded.  Defendant contends that he adequately pled that he has a good defense to the underlying

Tax Court proceedings by alleging that "he cannot be personally liable for all income tax of corporations with C-corp status," which he claims is the basis of the tax liability to which he stipulated owing in the Stipulated Decision.  Defendant's allegations sufficiently plead element two.

Element three asks whether fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense.  Here, too, Defendant pleads sufficiently element three through his allegations that he and the IRS were mistaken as to the proper status of the corporations held in the 1979 Trust for 1990 through 1992, and, therefore, as to what, if any, income taxes he owed related to those assets.

Even though Defendant's allegations adequately plead elements two and three of the standard for stating a claim for an independent action, however, Count I of Defendant's Amended Counterclaim fails to meet the rest of the five elements of the conjunctive test, and thus it still fails.

iii.    Element Four

Element four of an independent action requires a claimant to plead adequately "the absence of fault or negligence."  Defendant's pleadings, reviewed in light of public court proceedings properly considered by this Court, do not meet element four. Defendant pleads that he was not at fault or negligent for failing to understand the status of the assets at issue at the time of the Tax Court proceedings that led to the Stipulated Decision.  In fact, however, at the time of the proceedings, Defendant was not only a beneficiary of the Trust, but was acting as a trust advisor.  In light of those facts, the Court cannot accept Defendant's assertions that he was not negligent or at fault in

entering into the Stipulated Decision based on information it appears he should have known, or at least diligently attempted to understand, at the time of the proceedings. Further, reviewing this element in light of the stringent standards required under Rule 60(d)(1) to maintain an independent action, Defendant's allegations do not demonstrate an absence of his fault or negligence.

iv.    Element Five

Element five requires that a claimant sufficiently pleads "the absence of any adequate remedy at law."  In this case, with respect to element five, Defendant only presents one sentence – a conclusory allegation that no "adequate recourse to challenge the Stipulated [Decision] exists in law."  (Doc. 35 at ¶ 52).  Such a threadbare, conclusory recital of the elements of a cause of action is insufficient to state sufficiently a claim under Rule 12(b)(6).  *See Iqbal* at 678.  Thus, Defendant fails to meet the fifth element of an independent action under Rule 60(d).

In conclusion, Defendant's Amended Counterclaim does not meet the standards under Rule 60(d)(1), requiring "unusual and exceptional circumstances" and a "grave miscarriage of justice" to maintain an independent action, in light of the pleading standards required under *Iqbal* and *Twombly*.  For these reasons, Count I of Defendant's Amended Counterclaim is DISMISSED.[5]

*2.  Count II*

In Count II of Defendant's Amended Counterclaim, Defendant brings a claim for damages under the FTCA, 28 U.S.C. § 2672 *et seq.*, seeking to hold the OCC liable for "arbitrarily and capriciously failing to comply with its various statutes, regulations and

---

[5] The Court finds it unnecessary to address Plaintiff's alternative res judicata argument because this Court finds that Defendant has not stated a Rule 60(d) claim.

policies involving trust oversight." Specifically, Defendant alleges that the United States

"failed to regulate Trustee through the Department of the Treasury's Office of the

Comptroller of Currency ("OCC"), by acting arbitrarily and capriciously in failing to

properly regulate the trust department of Trustee, a national bank." Defendant alleges

that if the OCC had followed its own regulations, and performed an adequately in-depth

examination of the Trustee, "it would have discovered numerous improper transactions

that the Trustee undertook or failed to take" and "[a]s a result of the arbitrary and

capricious conduct…in regulating and investigating the Trustee," Scherer suffered

$4,778,133.53 in damages.

### a. Parties' Arguments

In its Second Motion to Dismiss, Plaintiff suggests six alternative reasons that

Count II should be dismissed as a matter of law. Plaintiff argues that: (1) Count II is

barred by collateral estoppel because it is premised on an assertion of wrongful conduct

by the Trustee, an issue that was directly at issue and which Defendant had a full and fair

opportunity fully to litigate in the May 14, 2008 Probate Court decision; (2) Count II

should be dismissed under Rule 12(b)(1) because it is a claim in respect to the

"assessment or collection of a tax," which is barred by 28 U.S.C. § 2680(c), which is an

exception to the FTCA's limited waiver of the United States' sovereign immunity; (3)

Count II fails as a matter of law because the conduct complained of is protected by the

discretionary function exception to the FTCA, 26 U.S.C. §2680(a); (4) Count II fails

because the OCC's bank examinations are not for the purpose of identifying or correcting

problems in specific; (5) Count II fails because Defendant has no damages and no

entitlement to the OCC's reports; and (6) the Court lacks jurisdiction under Rule

12(b)(1) because Defendant has not demonstrated that he has a private right of action to bring Count II. [6]

Defendant responds to each of Plaintiff's alternative arguments for dismissal. First, Scherer maintains that his FTCA claim is not barred by the doctrine of collateral estoppel because: (1) the issues Plaintiff seeks to estop Scherer from litigating here are not identical to any issues that were before the Probate Court; and (2) in any event, Plaintiff's argument is "defective because the record leading to the Probate Court's decision is not before this Court." Second, Scherer argues that Count II is not barred by 28 U.S.C. §2680(c) because it is not a claim arising with respect to the assessment or collection of any tax and is not related to the actions of the IRS; rather, "it arises out of the OCC's arbitrary and capricious conduct in exercising its trust regulation duties." Third, Defendant maintains that Count II is not barred by the FTCA's discretionary function exception because "the OCC's obligation to conduct a full-site examination is mandatory," "the OCC's actions or inactions at issue are not the type of activities the [exception] was designed to shield from liability." Further, Defendant asserts that the "equities of this case" require that "Plaintiff should be held accountable for the OCC's actions." Fourth, Scherer responds to Plaintiff's argument that his claim should be dismissed because the OCC's bank examinations are not designed or intended to identify and correct defalcations in specific accounts, insisting that "there are numerous duties

---

[6] Plaintiff's motion also argues that relief is barred by the Declaratory Judgment Act. Because Defendant clarifies that he seeks an order from this Court setting aside a judgment under Rule 60(d) and not a declaratory judgment, the Court declines to address Plaintiff's arguments related to the Declaratory Judgment Act. Additionally, in Plaintiff's Reply memorandum, it increases its arguments for dismissal, presenting *ten* alternative arguments. In addition to the six arguments made in its initial brief, Plaintiff adds that even if Defendant can show a "private person analog" to bring his FTCA claim, as a matter of law, Scherer cannot show that the OCC owed him a duty, that the OCC arbitrarily and capriciously breached a duty it owed to him, that the OCC was the proximate cause of an injury to Scherer, or that he suffered any damages. Plaintiff also argues that Defendant improperly asserts legal conclusions as facts.

which properly give rise to Count II."  Fifth, Defendant argues that his amended counterclaim "sufficiently alleges" questions of fact related to the OCC's actions to state a claim.  Sixth, and finally, in response to Plaintiff's argument that Defendant did not plead a private right of action, insisting that "it is well established that private individuals may bring claims against the OCC, and that the Amended Counterclaim sets forth numerous duties which form the basis of that private right of action in this case.

> b.  Requirements under the Federal Tort Claims Act

Sovereign immunity prevents suit against the United States without its consent. *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). Under the Federal Tort Claims Act ("FTCA"), however, sovereign immunity is waived for certain tort actions.  Under the FTCA, the government may be liable:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, ... if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C.A. § 1346(b)(1).  The FTCA "was designed primarily to remove the sovereign immunity of the United States from suits in tort and, with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances."  *Richards v. United States,* 369 U.S. 1, 6, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962).

As the Sixth Circuit has determined, the FTCA "neither creates causes of action against the United States nor provides a means of enforcing federal statutory duties. Rather, it 'constitutes consent to suit and is fundamentally limited to cases in which a private individual [would be liable] under like circumstances.'" *United States v. Cundiff,*

555 F.3d 200, 217 (6th Cir. 2009) (alteration in original). In other words, the FTCA "did not create new causes of action where none existed before.... 'Its effect is to waive immunity from recognized causes of action and [is] not to visit the Government with novel and unprecedented liabilities.'" *Delehite v. United States*, 346 U.S. 15, 43, 73 S.Ct. 956, 97 L.Ed. 1427 (1953) (quoting *Feres v. United States*, 340 U.S. 135, 142, 71 S.Ct. 153, 95 L.Ed. 152 (1950)). Indeed, claims brought under the FTCA involve a two-step analysis: "First the district court applies local law to determine liability and to assess damages. Second, federal law is invoked to bar proscribed recoveries, such as punitive damages." *Palmer v. United States,* 146 F.3d 361, 366 (6th Cir. 1998) (quoting *Kirchgessner v. United States*, 958 F.2d 158, 159 (6th Cir.1992)); *see Richards*, 369 U.S. at 10, 82 S.Ct. 585 ("We conclude that Congress has, in the Tort Claims Act, enacted a rule which requires federal courts ... to look in the first instance to the law of the place where the acts of negligence took place.").

Accordingly, "liability under the FTCA is usually determined by referencing state law." *Premo v. United States*, 599 F.3d 540, 544-45 (6th Cir. 2010) (citing *Molzof v. United States,* 502 U.S. 301, 305 (1992)); *see also Edkins v. United States*, No. 13-CV-14421, 2015 WL 871587, at *13 (E.D. Mich. Feb. 27, 2015) (finding that "the law of the place where the act occurred governs the suit." (citing 28 U.S.C. § 1346(b))). To state a claim, the claimant must establish a prima facie case for liability under the law of the state in which the act occurred. *Edkins v. United States*, No. 13-CV-14421, 2015 WL 871587, at *13 (E.D. Mich. Feb. 27, 2015); *Wardwell v. United States*, 764 F.Supp. 679, 681 (D.Me.1991).

Further, where the United States consents to be sued through legislation waiving sovereign immunity such as the FTCA, that consent, and necessarily the court's jurisdiction, is limited to the conditions imposed by Congress under which suits are permitted. *United States v. Sherwood,* 312 U.S. 584, 587, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *Ashbrook v. Block,* 917 F.2d 918, 922 (6th Cir. 1990); *Garrett v. United States,* 640 F.2d 24, 26 (6th Cir. 1981). Under the FTCA, the United States has imposed upon its consent to be sued an administrative claim requirement which precludes the institution of any tort claim unless a claim for such tort was first presented to, and "finally denied" by, the appropriate federal agency. 28 U.S.C. § 2675(a). To assert a claim under the FTCA, then, a claimant must exhaust his administrative remedies prior to filing suit. *See, e.g.*, *Perkins v. U.S. Dep't of Educ.*, No. C2-01-867, 2002 WL 31370473, at *3 (S.D. Ohio Sept. 30, 2002 (citing 28 U.S.C. § 2675(a)). The requirement that claimant exhaust his administrative remedies is also a jurisdictional prerequisite. *McNeil v. United States*, 508 U.S. 106 (1993); *Joelson v. United States*, 86 F.3d 1413, 1422 (6th Cir. 1996); *Lundstrum v. Lyng*, 954 F.2d 1142, 1145 (6th Cir. 1990); *Ashbrook v. Block*, 917 F.2d at 922; *Rogers v. United States,* 675 F.2d 123, 124 (6th Cir. 1982).

In the case *sub judice*, Count II of Defendant's counterclaim suffers from two fatal flaws: first, Defendant fails to establish a prima facie case for tort liability under the law of the state in which the acts it complains of occurred; and, second, Defendant fails to demonstrate, or even allege, that he exhausted his administrative remedies for his claims as required under the FTCA. *See, e.g.*, *Premo*, 599 F.3d at 544-45; *see also* 28 U.S.C. § 2675(a).

c.  Failure to Exhaust Administrative Remedies

Plaintiff does not plead or prove that he exhausted his administrative remedies. His only reference to any administrative action for the claim at issue in Count II is his allegation that he filed an administrative complaint at the same time of the filing of his original Answer and Counterclaim.  This is insufficient under  § 2675(a), which requires exhaustion of administrative remedies prior to filing for relief in federal court.  *McNeil v. United States,* 508 U.S. 106, 112, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("The most natural reading of the statute indicates that Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process."); see also, e.g., *CareToLive v. von Eschenbach*, 525 F. Supp. 2d 952, 970 (S.D. Ohio 2007) ("This requirement of exhaustion of administrative tort remedies is an absolute prerequisite to federal district court jurisdiction."); *Edwards v. D.C.*, 616 F. Supp. 2d 112, 116 (D.D.C. 2009) ("The plain language of the FTCA therefore bars a plaintiff from filing suit before he or she has exhausted these administrative remedies (citing *McNeil*); Booker v. United States, No. CIV.A. 13-1099, 2015 WL 3884813, at *3 (E.D. Pa. June 24, 2015) ("Section 2675(a) requires 'complete exhaustion of Executive remedies before invocation of the judicial process.'")

d.  Failure to State a Claim

Even if Defendant properly exhausted his administrative remedies, however, Count II of Defendant's Counterclaim still fails because it does not plead sufficiently a tort claim under Ohio law, the place of the alleged wrongful conduct.  Indeed, it is unclear from the Amended Counterclaim what kind of tort action Defendant seeks to make.  Even if, however, the Court assumes Defendant intended to file a claim of

negligence, the claim must be dismissed because Defendant did not plead adequately a duty owed to him by Plaintiff or, specifically, the OCC. *See Wallace v. Ohio DOC*, 96 Ohio St.3d 266, 274 (2002) ("Under Ohio law, the elements of negligence are: the existence of a legal duty; the defendant's breach of that duty; and damages directly and proximately caused by the defendant's breach.). Further, if the Court assumes that Defendant attempted to plead a breach of fiduciary duty under Ohio law, Plaintiff fails to plead adequately the existence of a fiduciary relationship between himself and Plaintiff or, more specifically, the OCC. *See Glimcher Co., LLC v. Deavers*, No. 2:09-CV-797, 2010 WL 1610709, at *8 (S.D. Ohio Apr. 19, 2010) ("In Ohio a breach of fiduciary duty claim has three elements: (1) the existence of a duty arising from a fiduciary relationship, (2) a failure to observe such duty, and (3) an injury proximately resulting therefrom." (citing *Strock v. Pressnell,* 38 Ohio St.3d 207, 216, 527 N.E.2d 1235 (1988); *McConnell v. Hunt Sports Ent.,* 132 Ohio App.3d 657, 687 (Ohio Ct.App.1999)); *see also Five Star Fin. Corp. v. Merchant's Bank & Trust Co.*, 192 Ohio App. 3d 544, 552, 949 N.E.2d 1016, 1021 (Ohio Ct.App. 2011) (in Ohio, "[a] fiduciary relationship has been defined as 'a relationship 'in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.'").

In Count II, Defendant merely alleges, in a conclusory fashion, that the OCC engaged in wrongful conduct and acted "arbitrarily and capriciously." This is insufficient to state a claim under Ohio tort law and, therefore, under the FTCA. For these reasons, Count II of Defendant's Amended Counterclaim must be dismissed as a matter of law.

**C.  Plaintiff's Motions for Sanctions under 28 U.S.C. § 1927 and/or F.R.C.P. Rule 11**

*1.  Second Motion for Sanctions*

In its Second Motion for Sanctions, Plaintiff again urges this Court to impose sanctions, in the form of attorneys' fees, on Defendant Scherer under either 28 U.S.C. § 1927 or, alternatively, under Federal Rule of Civil Procedure 11.  Plaintiff argues that an award of sanctions is warranted on the grounds that Defendant filed both its Counterclaim and Amended Counterclaim only for the purpose of delaying the proceedings and with the knowledge that both the original Counterclaim and the Amended Counterclaim were meritless.  Plaintiff maintains that the Amended Counterclaim was not well grounded in fact and not warranted by existing law at the time that it was filed, referencing the arguments in its Second Motion to Dismiss as evidence demonstrating that neither of Defendant's counterclaim and amended counterclaim require dismissal as a matter of law.  Plaintiff also claims that Defendant's counsel acted in bad faith by not providing sufficient responses to Plaintiff's complaint in either Defendant's Answer or Amended Answer.  Plaintiff seeks an award of attorneys' fees for $26,176.88.[7]  Plaintiff claims this amount represents fees for the number of hours spent preparing each of its motions to dismiss, and is not duplicative.

---

[7] Initially, Plaintiff requested a total of $30,881.88 in attorneys' fees as sanctions against Defendant. Plaintiff moved to correct, *nunc pro tunc*, the total amount of fees requested to $26,176.88, informing the Court that it mistakenly included an incorrect amount of hours in calculating the time spent working on the memorandum in support of its Second Motion to Dismiss.  (*See Motion to Correct*, Doc. 62).  Plaintiff seeks to amend the amount of hours spent working on its Second Motion to Dismiss from 108 hours ($16.389.00) to 77 hours ($11,684.75).  Plaintiff's Motion for Correction is well taken and thus is GRANTED.  This Court finds that United States' request for sanctions under 28 U.S.C. §1927 in its memorandum in support of its Second Motion to Dismiss and for Other Relief (Doc. 45) and in its Second Motion for Rule 11 Sanctions are deemed amended, *nunc pro tunc*, in accordance with the amended hours and corresponding amount of fees as stated in the Motion to Correct.

Defendant denies that either its Counterclaim or Amended Counterclaim were interposed for delay or any other improper purpose and that sanctions are not warranted under either § 1927 or Rule 11.  Specifically, Defendant argues that:  (1) Scherer "filed a valid and appropriate counterclaim subsequently amended," (2) his "counterclaims are well-grounded in fact and warranted by existing law," and (3) Plaintiff has requested unreasonable attorney's fees and cannot prove the number of hours that it spent responding to the Amended Counterclaim.

With respect to Count I, the Court concludes that, although the claim must be dismissed, the claim was not wholly frivolous such that sanctions are warranted under Rule 11 or § 1927.  *Macomb Interceptor Drain Drainage Dist. v. Kilpatrick,* No. 1113101, 2013 WL 501446, at *4–5 (E.D.Mich. Feb.11, 2013) (finding Rule 11(c) sanctions improper after granting 12(b)(6) motion to dismiss even though Plaintiff failed to allege necessary elements of a quasi-contract claim.); *Levine v. JPMorgan Chase & Co.,* No. 13–C–498, 2013 WL 5745050, at *1 (E.D.Wis. Oct.22, 2013) (rejecting request for Rule 11(c) sanctions even where Plaintiff's attorney eventually conceded that he could not state a claim under one of the counts in the complaint); *c.f. Schmidt v. Nat'l City Corp.,* No. 3:06–CV–209, 2008 WL 4057753, at *3 (E.D.Tenn. Aug.26, 2008) (finding Rule 11(b) sanctions at motion to dismiss stage would be appropriate in a case where an attorney brought a private civil cause of action under a criminal statute, which is something any lawyer should know).  Sufficient precedent exists to demonstrate that Defendant's attempt to bring an independent action under Rule 60(d)(1) was not entirely meritless or without support in law.  Further, Plaintiff does not present any other evidence which establishes, under a reasonable objectiveness standard, that Defendant filed Count

I for the purpose of delay or another improper purpose.  Therefore, the Court will not grant an award of sanctions under either Rule 11 or § 1927 for the time Plaintiff spent litigating Count  I.

With respect to Count II, however, the Court finds that sanctions are warranted, and will grant an award to Plaintiff under Rule 11, because the allegations made in Count II are not warranted by existing law or by a non-frivolous argument for extending or modifying the law.  In fact, Count II is foreclosed by the plain language of the statute, which requires administrative exhaustion before a claim may be brought in federal court under the FTCA.  *See* 28 U.S.C. § 2675(a) ("An action shall not be instituted upon a claim against the United States for money damages . . .  unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been *finally denied* by the agency in writing and sent by certified or registered mail) (emphasis added); *see also Waste Mgmt. Inc. v. Danis Indus. Corp.*, No. 3:00-CV-256, 2014 WL 4559228, at *5 (S.D. Ohio Sept. 12, 2014) (finding that for a legal position to be frivolous under Rule 11, it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands); *Neighborhood Research Inst. v. Campus Partners for Comm. Urban Dev.,* 212 F.R.D. 374 (S.D.Ohio 2002) (same).

Beyond a plain reading of the relevant statutory language, a review of Sixth Circuit case precedent (as well as cases of other federal courts) interpreting the relevant statutory sections would have revealed to Defendant that in order to state a claim against an agency under the FTCA, he must first exhaust his administrative remedies prior to filing suit.  In addition to failing to adequately plead a tort violation, Defendant also

entirely failed to plead administrative exhaustion, despite being represented by competent counsel.  The filing of this claim falls short of the obligations owed by members of the bar and resulted in additional expenses to the opposing party.  *See Jones v. Mathai*, 758 F. Supp. 2d 443, 448 (E.D. Mich. 2010) ("'There must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.'") (*quoting In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987)).

Under an objectively reasonable standard, the Court deems monetary sanctions, in the form of attorneys' fees, warranted under Rule 11.  For these reasons, Defendant's Second Motion for Rule 11 Sanctions is **GRANTED in part**.

The Court hereby **ORDERS** Plaintiff, **within 14 days of the date of this order**, to submit a detailed Bill of Costs, including a time sheet, narrative billing entries, and billing rate for the time spent preparing the Second Motion to Dismiss.  From that more detailed breakdown of costs incurred by Plaintiff, the Court will determine the appropriate amount of sanctions to be awarded.

> 2. *Plaintiff's Request for Sanctions for Defendant's Original Counterclaim*

In Plaintiff's First Motion to Dismiss and First Motion for Rule 11 Sanctions, Plaintiff requests sanctions, claiming that Defendant's original Counterclaim was frivolous and filed for the purpose of delay.  The Court is not convinced that sanctions are warranted for Defendant's original Counterclaim, under either Rule 11 or § 1927.  Therefore, this Court, in its discretion, **DENIES** Plaintiff's requests for sanctions in its First Motion to Dismiss and in its First Motion for Rule 11 Sanctions.  *See, e.g., In re*

*Meier*, 223 F.R.D. 514, 520 (W.D.Wis. 2004) ("As with a Rule 11 sanction, district courts have broad discretion in deciding upon a sanction award under § 1927.").

### D.  Requests for Supplemental Answers to Complaint

Within Plaintiff's Second Motion to Dismiss, finally, Plaintiff seeks supplemental answers to its complaint, arguing that Defendant's Amended Answer is incomplete and insufficient.  Defendant maintains that he has provided supplemental answers that Plaintiff seeks.  This Court orders a status conference to be held by the Magistrate Judge in order to determine whether this matter has been resolved, whether it can be resolved through cooperation of the parties, and, if not, to determine whether an order requiring supplementation should be entered against Defendant.

### E.  Motion to Bifurcate and/or Stay Proceedings

On February 9, 2015, Defendants jointly filed a Motion to Bifurcate Proceedings and/or Stay Discovery, (Doc. 73).  Defendants request that this Court enter an order bifurcating Count I of Defendant's Amended Counterclaim from the rest of the action, or structure discovery such that discovery related to Count I of the Amended Counterclaim could occur first, until the resolution of Plaintiff's Second Motion to Dismiss.  Because this Court now finds that Defendant's Amended Counterclaim will be dismissed, the Scherer Defendants' Motion to Bifurcate is MOOT.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's First Motion to Dismiss (Doc. 23) is **MOOT in part** and **DENIED in part**; Plaintiffs First Motion for Sanctions (Doc. 41) is **DENIED**; Plaintiff's Second Motion to Dismiss (Doc. 44) is **GRANTED in part**; and

Plaintiff's Second Motion for Sanctions (Doc. 58) is **GRANTED in part**.  Defendant's Motion to Bifurcate Proceedings and/or Stay Discovery (Doc. 73) is **MOOT**.

In addition, the Court **ORDERS** Plaintiff, **within 14 days of the date of this order**, to submit a detailed Bill of Costs, including a time sheet, narrative billing entries, and billing rate for the time spent preparing the Second Motion to Dismiss.

**IT IS SO ORDERED.**

            **s/ Algenon L. Marbley**
            **ALGENON L. MARBLEY**
            **UNITED STATES DISTRICT JUDGE**

**DATED:  September 14, 2015**