```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION

UNITED STATES OF AMERICA,      )
                               )
  PLAINTIFF,                   )      CASE NO. 2:14-CV-452
                               )
       vs.                     )      MARCH 29, 2017
                               )
RONALD SCHERER, et al.,        )      11:00 A.M.
                               )
  DEFENDANTS.                  )
_____)
```

**TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS**
BEFORE THE HONORABLE ALGENON L. MARBLEY
UNITED STATES DISTRICT JUDGE
COLUMBUS, OHIO


APPEARANCES:

FOR THE PLAINTIFF:

U.S. Department of Justice
By:  ALAN M. SHAPIRO, ESQ.
P.O. Box 55
Washington, D.C.  20044


FOR THE DEFENDANTS:

Kohrman, Jackson, Krantz LLP
By:  SAMIR DAHMAN, ESQ.
10 West Broad Street
Columbus, Ohio  43215


ALSO PRESENT:
Douglas Holmes, Esq.
Thomas Holmes, Esq.
Mary Ten Eyck Taylor, Esq.

                       - - -
     Proceedings recorded by mechanical stenography,
transcript produced by computer.

2

```
 1                    WEDNESDAY MORNING SESSION

 2                      MARCH 29, 2017

 3                           - - -
```

11:02:08:13  4        THE COURT:  Would counsel please identify themselves

5       for the record beginning with counsel for the government.

11:02:13:01  6        MR. SHAPIRO:  Your Honor, my name is Alan Shapiro.  I

7       represent the United States.

11:02:18:10  8        THE COURT:  Thank you, Mr. Shapiro.  Since we're in my

9       conference room, you can remain seated.

11:02:26:09  10       MR. DAHMAN:  Samir Dahman for Mr. Scherer, Your Honor.

11:02:30:20  11       THE COURT:  Mr. Dahman, would you spell your last name

12      for the record.

11:02:34:04  13       MR. DAHMAN:  D-A-H-M-A-N.

11:02:36:13  14       MR. SCHERER:  Ronald Scherer.  I guess I'm the

15      defendant.  That would be the right term.

11:02:45:18  16       THE COURT:  And we have some other --

11:02:46:09  17       MR. THOMAS HOLMES:  My name is Tom Holmes.  I'm an

18      attorney, and I'm here with advisors to Ron -- Mr. Sheer.

11:02:55:26  19       THE COURT:  And would you introduce those other lady

20      and gentleman.

11:02:59:21  21       MR. THOMAS HOLMES:  Mary Taylor is also an attorney

22      representing Ron.  My brother Douglas is also an advisor to

23      Ron.

11:03:14:00  24       MS. TEN EYCK TAYLOR:  I'm Mary Ten Eyck Taylor.

11:03:15:18  25       THE COURT:  And that's Douglas Owens?

11:03:15:18  1          MR. THOMAS HOLMES:  Holmes.

11:03:30:16  2          THE COURT:  We have three issues that we need to

3    address.  The first issue is the amount of Mr. Scherer's income

4    tax liability from 1990 through 1992.  And as everyone will

5    recall, the Court dismissed Mr. Scherer's counterclaim which

6    was, in effect, his defense to the income tax liability for

7    1990 to 1992.

11:04:02:23  8          Secondly, there's the issue of the government's right to

9    enforce the federal liens on the Lowestone Road property.  I've

10   decided previously that, to the extent the government is

11   entitled to judgment for income tax or trust fund recovery

12   penalty assessments, federal tax liens attached to this

13   property and the government may enforce them.  And the third

14   issue is how funds will be distributed from the Strome property

15   sale.

11:04:41:18  16         I understand the efforts to sell this property are

17   ongoing, but the Court, in an order that is Document 152 filed

18   on May 17th of 2016, set out the parameters and the procedures.

19   Because if I'm not mistaken – and I can refer to the document –

20   the property is not sold in 272 days, then the government has

21   the right to get another real estate broker and set the

22   commercially reasonable price for the property and proceed from

23   there.  The details are set forth.

11:05:33:09  24         We will take these issues up seriatim.  And I will begin

25   with you, Mr. Shapiro.  The amount of Mr. Scherer's tax

4

1    liability -- income tax liability for 1990, 1992.

2    11:05:53:00    MR. SHAPIRO:  Thank you, Your Honor.  As we discussed

3    at the status conference, the telephonic status conference that

4    we recently had, Mr. Scherer entered into a decision in the

5    U.S. tax court that involved, among other things, his 1990

6    through 1992 taxes.  He petitioned and contested the

7    deficiencies that the IRS asserted against him for those years.

8    And the tax court entered a decision that decided those taxes

9    in those years.  In fact, that decision is in the record

10   already.  It's Docket Item 5-1.  This is the copy that I'm

11   holding in my hand of the decision.

12   11:06:36:20    You'll note that on the first page in the third

13   paragraph - I realize you don't have that in front of you right

14   now - it says that there are deficiencies in income tax due

15   from petitioner, which was Mr. Scherer, for the taxable years

16   1990, '91 and '92 in the amounts of -- there are three dollar

17   amounts there respectively, and then it goes on.

18   11:07:00:02    THE COURT:  What are those three dollar amounts?

19   11:07:02:11    MR. SHAPIRO:  $552,113, three hundred twenty-six

20   thousand --

21   11:07:09:08    THE COURT:  Wait a minute.  You're going to have to go

22   a little slower.  For 1990, that would be five hundred

23   fifty-two thousand --

24   11:07:14:00    MR. SHAPIRO:  -- one hundred thirteen dollars.  Then

25   $326,659 and, finally, $298,046.08.  Then there are penalties

5

1    for those years under Section 6662(a).  And those are in the

2    amounts of $55,211, $32,665.90 and $29,804.61.

11:07:50:22    3    Also in the record are Exhibits 5-4, 5-5 and 5-6.  These

4    were all attachments to the complaint that the government

5    filed.  You'll note first on 5-4, specifically page two, that

6    the dollar amounts for 1990 that I read from the decision

7    appear as entries on the IRS account transcript for Mr. Scherer

8    for 1990.  If I was to go through the same exercise with

9    Exhibits 5-5 and 5-6, the numbers that I quoted you from the

10   decision, you'll see those here as well.  Of course, interest

11   and other penalties have accrued on those amounts.  So, in the

12   government's complaint, it alleged and sought for relief a

13   total of $4,778,133.53 plus statutory accruals from August 26,

14   2013.

11:08:58:17   15   And so, as you pointed out earlier, the only defense

16   that was represented to us by counsel for Mr. Scherer a much

17   earlier point in the litigation was essentially their amended

18   counterclaim.  As you noted, you've dismissed that.  So, at

19   this point, the government would contend -- and it's already

20   written in its papers.  In fact, on Docket Item 45 beginning at

21   page 19 -- I think it's referred to as page 28 of 60 depending

22   on which page number you look at -- we discussed the effects of

23   the doctrine res judicata from the tax court decision.  It

24   would be our position that any arguments that Mr. Scherer could

25   have made to the 1990 through '92 taxes he could have made them

6

1    or should have made them in the tax court proceeding, and he's

2    now barred from pursuing any others.  So perhaps --

11:09:55:18    3    THE COURT:  So that coupled with the counterclaim you

4    contend eliminates any contest to these amounts, as well as the

5    penalty amounts.

11:10:08:05    6    MR. SHAPIRO:  Correct, Your Honor.

11:10:10:22    7    THE COURT:  I did a quick math in my head of these

8    amounts.  And round it off, it's what? - about 1.1 million with

9    these deficiencies plus the taxes?  Did you do a total?  I'm

10    sure you did, Mr.Shapiro.

11:10:28:18    11    MR. SHAPIRO:  You mean did I add up the tax amounts

12    that I quoted?

11:10:31:14    13    THE COURT:  For 1990, '91 and '92.

11:10:34:02    14    MR. SHAPIRO:  I did not add up those numbers but it's

15    not as simple as simply doing what you suggested.  Because if

16    you note on 5-4 through 5-6, those were additional tax

17    assessments by examination by the IRS.  There are pages of

18    other items of things that were reported by the taxpayer and

19    other items that he might have paid partially.  So, when you

20    take into account credits, payments, reported amounts, amounts

21    determined at examination, when all of those calculations are

22    put together, on the first page of each of these IRS

23    transcripts, you will see an account balance.  That is what tax

24    was left as of the dates stated on here.  And then there is

25    accrued amounts that have not yet been accessed, and then a

1    total.  When I came up with the four million figure that I said

2    earlier, that's coming off of the account balance plus accruals

3    on each of these three transcripts.

11:11:32:17    4    THE COURT:  I see.  So what is the total amount for

5    1990 through 1992 that the government is asking for that you

6    claim you're entitled to?

11:11:45:27    7    MR. SHAPIRO:  Again, that would be $4,778,133.53 plus

8    statutory accruals by federal law from August 26th, 2013.

11:12:08:08    9    THE COURT:  And those accruals have not been

10   calculated?

11:12:12:12    11   MR. SHAPIRO:  From August 26th to the present they

12   have not yet been calculated.

11:12:16:00    13   THE COURT:  Okay.

11:12:18:06    14   MR. SHAPIRO:  I think that is also what you're going

15   to find in the prayer for relief in our complaint, the number

16   and the things that I just said.

11:12:25:07    17   THE COURT:  Okay.  Mr. Dahman.

11:12:28:03    18   MR. DAHMAN:  Your Honor, we effectively had two

19   counterclaims, the amended counterclaim.  One was the 60(d).

20   If you'd like, Mr. Scherer can elaborate on that.  It boils

21   down to there were two inconsistent findings between the tax

22   court and the probate court in the litigation here in Franklin

23   County and the FTCA claim.  And those claims were dismissed.

24   We respectfully disagree with the basis for the decision, but

25   here we are today.

8

11:13:01:21  1        Mr. Scherer effectively has given up already $600,000 in

2   assets, the two properties.  And that's where we are today.

11:13:12:19  3        THE COURT:  Have those assets -- those assets have not

4   yet been offset against this tax liability, have they,

5   Mr. Shapiro?

11:13:20:17  6        MR. SHAPIRO:  That's correct.  Would you like me to

7   give you a brief status on that?

11:13:23:27  8        THE COURT:  We'll get to that in a second.

11:13:26:27  9        Go ahead, Mr. Dahman.

11:13:29:02  10       MR. DAHMAN:  I think it might be beneficial for

11  Mr. Scherer to actually explain the basis of the 60(d) briefly,

12  if the Court would --

11:13:37:00  13       THE COURT:  I'm going to give him an opportunity.  But

14  that still doesn't address the res judicata issue that

15  Mr. Shapiro raised.  So I don't expect Mr. Scherer to respond

16  to that.  I expect you to, however.

11:13:52:16  17       MR. DAHMAN:  Thank you, Your Honor.  We believe that

18  Rule 60(d) provides the basis for getting around the res

19  judicata argument and the case law around that because of the

20  exceptional nature of these completely inconsistent findings

21  where one court believes that -- the tax court believes that

22  there's S income and the probate court does not agree that

23  there's S corp income.

11:14:14:28  24       And to get to the heart of it, Chase, the trustee at the

25  time, did some things wrong.  And that's where the inconsistent

9

1    judgments lie.  And we do believe that that is an exception to

2    the res judicata doctrine.

3           THE COURT:  How is a third party's failure to act, or

4    acts of malfeasance -- let's say that Chase failed to discharge

5    certain fiduciary duties.  How does that address the res

6    judicata issue?  Res judicata is simply saying you had the

7    opportunity to raise these defenses before the tax court in

8    that litigation.  And you could have raised all of the defenses

9    because that's what that litigation was about, 1990 to 1992

10   federal tax deficiencies.  And you didn't.  So how is something

11   that Chase did, or failed to do, a defense to your failure to

12   raise these defenses or claims?

13          MR. DAHMAN:  It didn't happen until after the tax

14   court settlement.  The finding of the probate court which found

15   that the income was C corp income, not S corp income, didn't

16   occur until long after the tax court settlement occurred.  It

17   wasn't something that hadn't come into existence yet so it

18   could not have been raised.

19          THE COURT:  So you accept Mr. Shapiro's position that

20   other defenses which could have been raised to the deficiencies

21   were not -- are now waived because they weren't raised in the

22   tax court.  And that the only defense, if any, that you have is

23   Chase's acts or failure to act?

24          MR. DAHMAN:  Essentially, Your Honor.

25          MR. SCHERER:  And the IRS code.

10

11:16:27:19    1        MR. DAHMAN: And the code provides for that. The code

2   provides that the whole framework where if their income isn't

3   reported, or if the income isn't S income, then it's C income

4   and Mr. Scherer doesn't owe it.

11:16:39:29    5        THE COURT: Mr. Shapiro.

11:16:41:12    6        MR. SHAPIRO: This was all briefed and the Court

7   already decided all of these arguments in favor of the

8   government. I didn't come here to relitigate a case, a matter

9   in the case that the Court has already decided. I apologize.

10   I don't mean to be flippant.

11:16:58:01   11        THE COURT: And you weren't being flippant. I think

12   that's a fair response.

11:17:06:02   13        MR. DAHMAN: And I'm not trying to argue what's

14   already been decided by the Court. We respect your decision.

11:17:11:21   15        THE COURT: Now we're back to sort of where we

16   started, the income tax liability from 1990 through 1992. It

17   seems that it's 4.7.

11:17:26:20   18        MR. DAHMAN: Roughly.

11:17:28:16   19        THE COURT: Yes.

11:17:29:11   20        MR. DAHMAN: Okay.

11:17:31:16   21        THE COURT: Go ahead, Mr. Scherer.

11:17:33:01   22        MR. SCHERER: Those taxes were part of a ten-year

23   audit on various companies. And that company was -- those

24   companies were sold. And I wanted to end the audit and so

25   local counsel here took a new approach, got it all figured out.

11

1       And the settlement agreement which I signed, I signed, 2005, as

2       he said, before the information came to us that the S was all

3       whopper-jawed, if you will.  The tax that I know of, that I

4       believe that we agreed to out of that was the 1.1 million.

5       What I did not know -- my fault, I didn't know -- apparently

6       after you sign that agreement, the government can go turn it

7       into a judgment at a tax court hearing of some kind.  And it

8       did.  I have never been to a tax court, haven't presented

9       anything to the tax court that I know of.  I believe the number

10      is 1.1 million.

11              THE COURT:  Do you have anything further?

12              MR. DAHMAN:  Thank you, Your Honor.  No.

13              THE COURT:  Mr. Shapiro, do you have anything further

14      on that point?

15              MR. SHAPIRO:  It's been exhaustively briefed and

16      decided by the Court.

17              THE COURT:  Okay.  I understand your position,

18      Mr. Scherer, but Mr. Shapiro is correct.  The amount that is

19      owed is $4,778,133.53 plus the statutory accruals from

20      August 26th, '13.

21          Mr. Shapiro, the next issue.  You were going to comment

22      on the properties beginning with the Lowestone Road property.

23          MR. SHAPIRO:  We will file papers to seek appointment

24      of a receiver to market and sell that property.  When they have

25      a contract, we'll submit that to the Court for approval.

11:19:41:01   1      THE COURT:  But nothing has been credited to that

  2  deficiency yet.

11:19:47:22   3      MR. SHAPIRO:  Not yet because until the property is

  4  sold and we know how much it's sold for and what, if any, other

  5  creditors would have to be paid as well, we won't know what a

  6  net figure is.  When we do, that money will be applied to the

  7  tax status.

11:20:03:23   8      THE COURT:  What about the Strome property?

11:20:05:29   9      MR. SHAPIRO:  The Strome Court property, the 270-day

  10  period expired.  The government conveyed to Mr. Scherer's

  11  counsel that it would like to have a different real estate

  12  agent handle the sale.  I've been communicating with another

  13  attorney, not Mr. Dahman, Mr. Belongia, I think, to make

  14  arrangements for that Realtor to be able to have access to the

  15  property and sell it.  In fact, I had those communications

  16  yesterday.

11:20:34:28   17      One of the difficulties that we've experienced, or that

  18  the real estate agent who is a local agent has experienced, is

  19  that there's no key to the house.  The garage code or the

  20  garage door doesn't work which is apparently the only way to

  21  get in.  Or perhaps most importantly, that counsel for

  22  Mr. Scherer suggested that the Realtor could work with a person

  23  named David Thompson who is a trustee of one of Mr. Scherer's

  24  trusts.  He is the person who should be able to work with the

  25  Realtor to help her get access and apparently to be able to

13

1    sign listing agreements and other documents she will need to

2    begin marketing and selling that property on Strome Court.  But

3    he is very difficult to reach for her.

4        And I sent an e-mail yesterday to Mr. Belongia asking if

5    he could either be made to be more responsive or perhaps a

6    substitute could be found who could be more available for our

7    local Realtor to work with.

8        THE COURT:  Mr. Scherer, you're not related to Lance

9    Scherer, are you?

10       MR. SCHERER:  No, sir.

11       THE COURT:  I was constrained to ask that question

12   because Lance Scherer was a former law partner at the Vorys Law

13   Firm where I was a partner.  He had left around -- I think

14   there might have been a brief overlap between the time that he

15   was there, the time that I was there, but we were never there

16   together as partners.  I was an associate when I joined the

17   firm.  He left as a partner.  I just wanted to make sure that

18   if you were related to him, I wanted to make that disclosure on

19   the record so that at some point later on down the road there

20   would be no concerns about a conflict that had not been

21   disclosed.

22       MR. DAHMAN:  May I add something, Your Honor?

23       THE COURT:  Yes.

24       MR. DAHMAN:  I believe Mr. Thompson and the Realtor

25   have connected.

14

11:22:36:13   1   MR. SHAPIRO:  She did reach him once.  Without wanting

2   to bog the judge down with all the little nitty-gritty of

3   e-mails that don't get returned or phone calls that don't get

4   answered, she has had a tough time trying to get in contact

5   with him.  Without a key, she can't use the lockbox.  There's a

6   safety issue and also a vandalism risk which is of mutual

7   concern of the government and Mr. Scherer.

11:23:03:12   8   THE COURT:  Could I see Mr. Dahman and Mr. Shapiro in

9   my office?

10   (Recess taken from 11:24 a.m. to 12:22 p.m.)

12:22:51:28   11   THE COURT:  The Court has now spoken with the parties

12   collectively, and I have spoken with the parties individually.

13   For the record, Mr. Shapiro, on behalf of the government, has

14   tendered a draft judgment for income taxes.  In his draft

15   judgment -- and I'll read the crux of it.

12:23:19:00   16   It reads as follows:  Judgment is granted in favor of

17   the plaintiff, the United States of America, and against

18   Defendant Ronald E. Scherer for unpaid income taxes for the

19   years 1990, 1991 and 1992 in the total amount of $4,778,133.53,

20   plus statutory accruals as allowed by law from August 26th,

21   2013, including but not limited to interest pursuant to federal

22   law until fully paid.  Based on the record and for the reasons

23   discussed in the findings and order at Docket Item No. 171,

24   there's no just reason for delay -- I'm sorry.  There's no just

25   reason to delay the entry of a final judgment.  Therefore, this

15

1    judgment is final under Rule 54(b) of the Federal Rules of

2    Civil Procedure.

12:24:21:15   3    During my conference with counsel for the government,

4    Mr. Shapiro, and counsel for the defense, Mr. Dahman,

5    Mr. Dahman requested that he be given an opportunity to respond

6    before the Court entered judgment for these income taxes.  In

7    the interest of completeness of the record, I asked Mr. Dahman

8    what issues he would raise.  He was not quite clear, but after

9    talking with Mr. Dahman and his client, Mr. Scherer, there was

10    some reference to issues that you believe you would raise.

12:25:12:05   11    Mr. Dahman, I'm going to allow you to summarize what

12    those issues are.

12:25:18:16   13    MR. DAHMAN:  Those issues would be due process, Your

14    Honor.  No evidence has been put forward.  The complaint was

15    not verified.  No witness has testified to the facts supporting

16    the government's claims.  There hadn't been a single piece of

17    authentic evidence admitted into the case thus far, Your Honor.

18    And that's why we request the -- at least some number of days,

19    as permitted by the local rules, to have the opportunity to

20    respond more fully.

12:25:53:21   21    That being said, Your Honor, I believe Mr. Scherer

22    explained just a moment ago that he intends to and, in fact,

23    has already filed for bankruptcy.

12:26:07:09   24    MR. SHAPIRO:  May I respond, Your Honor?

12:26:08:14   25    THE COURT:  Absolutely, Mr. Shapiro.

16

12:26:09:26  1      MR. SHAPIRO:  We consider Mr. Dahman's arguments

2      frivolous, and we will consider filing a sanctions motion if we

3      have to file a motion for summary judgment.  There are

4      transcripts in the record, and they've known about the

5      liabilities for more than two years.

12:26:28:28  6      THE COURT:  I think that the -- based on the record

7      before the Court and some of the arguments made by Mr. Shapiro,

8      at first blush I would agree that I have no idea of the

9      arguments that can be raised by the defense with respect to the

10      tendered judgment for income taxes that the Court just read

11      into the record.  And just for record purposes, I will

12      denominate this as Exhibit A for the record here.

12:27:06:23  13      But in an abundance of caution, and because while I

14      don't know of any arguments that can be made given the posture

15      of this case, there may be some of which I am unaware that may

16      be meritorious.  So I think that the most prudent course is to

17      give the government an opportunity to file its motion for

18      summary judgment, give you an opportunity to respond within the

19      time permitted by the local rules which is 21 days, and give

20      the government, of course, an opportunity to reply.

12:27:56:21  21      I want the parties to understand - and I'm going to give

22      you, Mr. Shapiro, a date certain based on how long you tell me

23      you believe it will take you to prepare a motion for summary

24      judgment - that I'm not going to countenance delays in this

25      briefing process because I don't see any factual issues that

1  would percolate as you're going through the process of

2  preparing a response to the government's motion.

12:28:31:02  3      I think that the issues in this will be legal.  I say

4  that because from time to time I get motions for extensions

5  because additional discovery, for instance, has to be done in

6  the form of depositions and the like.  That shouldn't have to

7  be in this case.  There shouldn't be any additional discovery.

8  This case has been pending since 2014.  It's not a

9  fact-intensive case, at least not as it's presently postured

10  with some of the arguments that have already been made and that

11  are a part of this record.  And so I don't anticipate there

12  being any basis for continuances.  I want the legal issues set

13  forth clearly and plainly.  This case has languished long

14  enough.  I want to move on with it.

12:29:39:05  15      Mr. Shapiro, how long will it take the government to

16  prepare its motion for summary judgment?

12:29:47:06  17      MR. SHAPIRO:  Based on other cases that I'm handling

18  and my work in the other cases, I would like to have -- I'd

19  like to have a 21-day period to file the motion.

12:30:07:04  20      THE COURT:  Okay.  April 21.

12:30:37:16  21      MR. SHAPIRO:  Your Honor, what day is the 21st?

12:30:40:21  22      THE COURT:  Friday.

12:30:42:01  23      MR. SHAPIRO:  Okay.  Thank you.

12:30:42:27  24      THE COURT:  And you will have, Mr. Dahman, May 12th.

25  And your reply, Mr. Shapiro, will be May 22nd.

12:31:04:11  1              MR. SHAPIRO:  Your Honor, what day is the 22nd?

12:31:07:23  2              THE COURT:  Monday.

12:31:09:09  3              MR. SHAPIRO:  Would it be all right if I have until

            4      that Friday of that week?

12:31:16:15  5              THE COURT:  You mean the 26th?

12:31:19:01  6              MR. SHAPIRO:  Yes.

12:31:19:16  7              THE COURT:  Any objection?

12:31:23:12  8              MR. DAHMAN:  No, Your Honor.

12:31:24:04  9              THE COURT:  The 26th.

12:31:24:27  10        Now, gentlemen, those days work for both parties.  You,

            11      Mr. Dahman?

12:31:33:18  12              MR. DAHMAN:  Yes, Your Honor.

12:31:34:09  13              THE COURT:  You, Mr. Shapiro?

12:31:36:09  14              MR. SHAPIRO:  Yes, Your Honor.

12:31:37:09  15              THE COURT:  The reason I ask is because there will be

            16      no extensions.  Those are the dates.

12:31:44:19  17              MR. SHAPIRO:  Your Honor, that's a very stern warning

            18      to both of us.  I know, however, that based on past history in

            19      this case, there's no way for me to predict what I might be

            20      replying to.

12:32:01:20  21              THE COURT:  One thing that's certain, you will not see

            22      any issues that you haven't seen before.  I don't know that

            23      anyone knows more about this case from the government's side

            24      than you.  And with 27 years of experience, the likelihood that

            25      you will see something that is either unknown to you or

19

| | |
|---|---|
| | 1 unknowable by you, Mr. Shapiro, is slim and none. |
| 12:32:34:02 | 2 MR. SHAPIRO: Thank you. And you also did say that |
| | 3 there won't be any factual issues. |
| 12:32:38:14 | 4 THE COURT: That's right. These are legal arguments. |
| 12:32:42:29 | 5 And I'm looking at June 2nd as a date for oral argument |
| | 6 because I believe I start a trial on June 5th. |
| 12:34:25:11 | 7 MR. SHAPIRO: Judge Marbley, may I say something? |
| 12:34:27:11 | 8 THE COURT: Absolutely, you may. |
| 12:34:28:02 | 9 MR. SHAPIRO: I want the record to be clear that the |
| | 10 government considers the request for summary judgment |
| | 11 proceedings by Mr. Dahman and Mr. Scherer to be inappropriate, |
| | 12 to say the least. In light of the fact that he said he intends |
| | 13 to file bankruptcy, and the fact that they have dragged out |
| | 14 there proceeding for over two years, we also believe that |
| | 15 there's grave concern that there has been a delay tactic to let |
| | 16 Mr. Scherer spend and hide his assets. There is a lengthy |
| | 17 history that supports that possibility. So we are looking at |
| | 18 this entire briefing and oral argument procedure as really |
| | 19 nothing more than a ploy at an inappropriate delay. And we |
| | 20 will consider all the ramifications of that as we go forward. |
| 12:35:12:09 | 21 THE COURT: All right. Your record is made to the |
| | 22 extent that you needed to make the record. |
| 12:35:18:03 | 23 MR. SHAPIRO: Thank you. |
| 12:35:18:18 | 24 THE COURT: And I'm going to ask the parties to hold |
| | 25 June 8th, a Thursday, for oral argument because I'm not certain |

1    that I'll need oral argument on this case.  And that would

2    address some of the time concerns that you may have.  Now, upon

3    receipt of the briefs, if I determine that oral argument is

4    necessary, then we'll go forward on the eighth.  I just want

5    that date to be held.

6    12:36:10:00    But I will let you know in ample time, Mr. Shapiro,

7    since you'll have to travel.

8    12:36:15:25    Mr. Dahman, you're local so your getting down here won't

9    be an issue.  Your getting here will be.  So I'll make certain

10   I'll give you at least a couple of weeks before so that you'll

11   know.

12   12:36:31:21    I really want to see -- I'll really determine whether

13   I'll desire oral argument based on the defense reply brief.

14   And once I get that, I'll make a decision as to whether I go

15   forward with oral argument.

16   12:36:51:17    Is there anything further from the government,

17   Mr. Shapiro?

18   12:36:56:28    MR. SHAPIRO:  It would be helpful if we get some

19   direction on whether Mr. Thompson is going to continue to be

20   the person that the local Realtor should be working with or if

21   someone else might be more responsive.

22   12:37:10:10    THE COURT:  Mr. Dahman.

23   12:37:11:14    MR. DAHMAN:  I believe that Mr. Thompson has been in

24   contact already with the Realtor, and that these concerns are

25   not as grave as they are.  But I believe that Dave is the

21

1    person.

2          MR. SCHERER:  He's here.  He's 77 years old.  But he's

3    here.  He's familiar with the property and he answers his

4    phone.  He goes to work every day and he has talked to her.

5    And I believe he even sent an e-mail.  So we don't intend on

6    changing unless you tell us we have to find somebody else.  As

7    you know, I'm in Florida.

8          MR. SHAPIRO:  When she calls the phone number, she

9    reports to me that she's heard somebody respond and calls

10   herself Annie and said she doesn't know who Mr. Thompson is.

11   Sometimes she gets a message that indicates -- the voice mail

12   message says it's the Scherer trust or something to that

13   effect.  The e-mails don't always get responded to.  There's

14   the issue of the door lock.

15         THE COURT:  Is there anyone else we can deal with?

16         MR. SCHERER:  I'm here in the next couple of days.

17         THE COURT:  Other than Mr. Thompson, who else would be

18   in a position to --

19         MR. SHAPIRO:  It's a question also of who has the

20   authority within the College Properties Inc., which is the

21   record title holder to the property, to sign a listing

22   agreement, to sign a settlement paper.  And there's also the

23   outstanding real property taxes and the outstanding homeowner

24   association fees.

25         THE COURT:  This is going to be the easiest way to do

1   this.  What do you need from Mr. Thompson like immediately?

2   MR. SHAPIRO:  Give a key to the lock and fix the

3   garage door opening so that she can put a lockbox on the front

4   door.  Make himself readily available so that if she needs him

5   to sign papers for her for a listing agreement or something of

6   that nature, that she can get in touch with him relatively

7   easily.  And they need to get the real property taxes and HOA

8   fees up to date.  They're thousands of dollars in arrears.

9   THE COURT:  One and two will be an easy fix.  Three is

10  kind of like a mini layer of -- M-I-N-I -- litigation.  So what

11  I'm going to do is order that -- what is your person's name?

12  MR. SHAPIRO:  Her name is Christy Garner.

13  THE COURT:  That Ms. Garner be provided a key to the

14  property on or before April 3rd.  And a failure to do that will

15  be violation of the Court order and could lead to a finding of

16  contempt.

17  Will it be necessary, Mr. Shapiro, to have the garage

18  door repaired since I'm ordering that a key be provided, since

19  the reason that you wanted the garage door repaired was to be

20  able to get into the property?

21  MR. SHAPIRO:  And the answer is yes, because any

22  prospective buyer would want to see that it's functioning.

23  THE COURT:  I don't know -- it's difficult to order a

24  time period because I don't know the extent of the damage to

25  the garage door.  Does --

12:38:44:16
12:39:12:23
12:39:29:11
12:39:32:27
12:39:54:28
12:40:10:09
12:40:17:26

23

| | | |
|---|---|---|
| 12:40:29:02 | 1 | MR. SCHERER:  Your Honor, I believe it was just a |
| | 2 | problem with her entering the code.  It's working the last I |
| | 3 | was there. |
| 12:40:36:10 | 4 | THE COURT:  So I'm going to direct that the code be |
| | 5 | provided to Ms. Garner, along with the key.  So the code and |
| | 6 | the key on or before April 3rd. |
| 12:40:50:21 | 7 | MR. SHAPIRO:  And given that Mr. Scherer has indicated |
| | 8 | it's functioning, that it will be a functioning garage door. |
| 12:40:56:18 | 9 | THE COURT:  It will be a functioning garage door. |
| 12:40:59:13 | 10 | Now, the third issue about -- |
| 12:41:02:22 | 11 | MR. DAHMAN:  Your Honor, is the Court ordering that |
| | 12 | the garage door be functioning? |
| 12:41:07:03 | 13 | THE COURT:  No.  I'm ordering that the code be |
| | 14 | provided based on Mr. Scherer's representation that the garage |
| | 15 | door functions. |
| 12:41:16:28 | 16 | MR. DAHMAN:  Thank you. |
| 12:41:17:11 | 17 | THE COURT:  If the garage door doesn't function, then |
| | 18 | you're to report back to me and we'll proceed from there.  It |
| | 19 | really is not my desire to micromanage this.  I would hope that |
| | 20 | you all can get this done without my involvement. |
| 12:41:34:16 | 21 | Now, with respect to the third issue, Mr. Shapiro, the |
| | 22 | issue of outstanding -- |
| 12:41:43:05 | 23 | MR. SHAPIRO:  Real property taxes and homeowner |
| | 24 | association fees. |
| 12:41:46:13 | 25 | THE COURT:  How much is that, do you know? |

24

12:41:48:24    1           MR. SHAPIRO:  Several thousand of real property taxes

2   and more than a thousand of HOA fees.

12:41:55:20    3           MR. SCHERER:  It is our belief we entered a settlement

4   agreement, although my two cents hasn't been followed like it

5   should.  But it says that any taxes and fees will be paid at

6   closing.

12:42:16:14    7           MR. SHAPIRO:  I'm not aware of such an agreement.

12:42:17:29    8           THE COURT:  I'm going to give you and Mr. Dahman --

9   I'm going to leave that to the two of you to peel the layers of

10   the onion back to see what, in fact, would be the amount of the

11   real property taxes and homeowner association fees and to

12   confirm what Mr. Scherer represented to the Court, that it has

13   been agreed among the parties that the fees and those back

14   taxes on the property are to be paid at closing.  Because if

15   that's the agreement, then that's the agreement.

12:43:03:08    16           MR. SCHERER:  Your Honor, it doesn't say -- I just

17   want to make sure I didn't misspeak.  It doesn't say the

18   homeowner fees specifically.  It just says taxes and other

19   fees, I believe.

12:43:14:04    20           THE COURT:  And that agreement was entered into

21   between whom?

12:43:18:05    22           MR. SCHERER:  Ourselves and the government in order

23   to -- it was the -- you have 270 days to sell it.  And we did

24   have a contract to sell it.  It wasn't the most exciting one

25   that could have happened.  And then after that, they get to

25

1   sell it.  And that's the period we're now in.  And I believe

2   that language is in that agreement.

12:43:39:17   3        THE COURT:  They say it is.  You say it isn't.

12:43:42:07   4        MR. SHAPIRO:  I'll read it again.  I'm only human.

5   Maybe it's possible that he's right.  I'll give him the benefit

6   of the doubt and read the agreement.

12:43:50:05   7        MR. SCHERER:  That's a first --

12:43:51:27   8        THE COURT:  And then we can come back and determine --

9   maybe we can have a three o'clock conference call on Monday.

10  By that time, you'll have the key.  You should know about

11  whether the garage door, in fact, opens, and then you can let

12  me know the status of this agreement about the payment of

13  homeowner fees, or taxes and fees, whether there is, in fact,

14  an agreement between the parties that should be addressed at

15  closing.  There's no need for me to decide an issue that has

16  already been resolved.

12:44:48:12   17       Is there anything --

12:44:54:24   18       MR. SHAPIRO:  Conference call at three o'clock on what

19  day?

12:44:59:12   20       THE COURT:  Monday, April 3rd.

12:45:02:09   21       So, Mr. Dahman, I want to make sure that the key and the

22  code have been given to Ms. Garner by noon on the third so that

23  by that time, Mr. Shapiro, Ms. Garner will have had an

24  opportunity to test both the key and the garage door to see

25  whether it works so that when we have our telephonic status

26

1    conference at three o'clock on Monday, I'll know what we have.

2         Is there anything further from the government,

3    Mr. Shapiro?

4              MR. SHAPIRO:  No, Your Honor.

5              THE COURT:  Anything further from the defense,

6    Mr. Dahman?

7              MR. DAHMAN:  No, Your Honor.  Thank you.

8              THE COURT:  Thank you very much, everyone.

9         (Proceedings concluded at 12:45 p.m.)

10                             – – –

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1
<u>C E R T I F I C A T E</u>

2

3     I, Shawna J. Evans, do hereby certify that the

4 foregoing is a true and correct transcript of the proceedings

5 before the Honorable Algenon L. Marbley, Judge, in the United

6 States District Court, Southern District of Ohio, Eastern

7 Division, on the date indicated, reported by me in shorthand

8 and transcribed by me or under my supervision.

9

10

11                    s/Shawna J. Evans_____
                   Shawna J. Evans, RMR, CRR
12                    Official Federal Court Reporter

13

14                    April 5, 2017

15

16

17

18

19

20

21

22

23

24

25