IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | Case No. 2:14-cv-452 |
| Plaintiff, : | |
| : | JUDGE ALGENON L. MARBLEY |
| v. : | |
| : | Magistrate Judge Terence P. Kemp |
| RONALD E. SCHERER, *et al.*, : | |
| : | |
| Defendants. : | |

## OPINION & ORDER

This matter is before the Court on Plaintiffs' Motion to Appoint a Receiver. (Doc. 196) The motion has not been timely opposed by Defendant Ronald Scherer. For good cause shown, the motion is **GRANTED**.

### I. BACKGROUND

#### A. Factual Background

In 2002, the Internal Revenue Service (IRS) issued a notice of deficiency to Defendant Ronald Scherer for unpaid income tax liabilities from the years 1990, 1991, and 1992 in the amounts of $552,113.00, $326,659.00, and $298,046.08, respectively.  The IRS also asserted that Scherer owed penalties of $55,211.00, $32,665.90, and $29.804.61, respectively.  (Doc. 193, 1). After the Tax Court upheld these penalties and deficiencies, the government sued Mr. Scherer in this Court in 2014, seeking the unpaid income tax liabilities, plus interest and other statutory accruals. (Count I, Doc. 1, at ¶¶ 105-107.)

While litigation in this Court was pending, Mr. Scherer filed for Chapter 11 bankruptcy in the Bankruptcy Court for the Middle District of Florida. (Doc. 175.)  The Court stayed this case pending the bankruptcy case's conclusion or the bankruptcy court's lifting the automatic

1

stay.  (Doc. 177.)  The bankruptcy court lifted the automatic stay on May 26, 2017, "to permit the United States to proceed in [this Court] for the sole purpose of obtaining a final judgment on [Mr. Scherer's] tax liability for 1990, 1991, and 1992."  (Ex. 1 to Doc. 187)

The government then sought summary judgment in this Court on the issue of Mr. Scherer's tax liabilities.  (Docs. 186, 187).  On July 26, 2017, this Court ruled in favor of the government and determined that Mr. Scherer owed taxes in the amount of $5,429,482.54, plus statutory accruals as allowed by law from June 30, 2017, until fully paid.  (Doc. 193)

Now, in an effort to collect the taxes owed, the government seeks to enforce its liens on two properties that Mr. Scherer owns in Ohio, one located at 6015 Strome Court in Dublin and one on 4425-4427 Lowestone Road in Columbus.  On March 29, 2017, this Court held a status conference with the parties for the purpose of addressing, among other things, the government's right to enforce those liens.  (Doc. 178) The government conveyed that the real estate agent tasked with selling the properties had encountered a number of difficulties in selling the properties: there was no key to the house, the garage door did not work, and key parties were often unavailable. (Doc. 178, 11-12).  The government now seeks to resolve those issues via a Motion to Appoint a Receiver to sell the properties, pending the Court's resolution of the parties' respective interest in the income produced by the sale.  (Doc. 196).  Mr. Scherer has not filed a timely response to the government's motion.

Meanwhile, Mr. Scherer's attorneys sought to withdraw as defense counsel.  This Court held an ex parte telephone conference with defense counsel and with Mr. Scherer, and, on August 4, 2017, granted the motion to withdraw for good cause shown. (Doc. 197). The Court also ordered Mr. Scherer to retain counsel within 60 days of the date of the order, until on or before October 3, 2017.  (*Id.*)  That period has since elapsed, and Mr. Scherer has had no

communication with this Court about his efforts to comply with the order.

## II.   ANALYSIS

Federal district courts hold "broad equitable powers to appoint a receiver over assets disputed in litigation before the court." *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006). Factors a court may consider include whether there exists a "valid claim by the party seeking the appointment; the probability that fraudulent conduct has occurred or will occur to frustrate that claim; imminent danger that property will be concealed, lost, or diminished in value; inadequacy of legal remedies; lack of a less drastic equitable remedy; and likelihood that appointing the receiver will do more good than harm." *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316–17 (8th Cir. 1993). Here, the Court has already recognized the validity of the government's claims on the Lowestone Road Property and the Strome Court Property. (Doc. 178, 3; Doc. 152) And there is imminent danger that the Strome Court Property will diminish in value. In the March 29 status conference, the government conveyed that the realtor tasked with selling the Strome Court Property has been unable to do so because she has not been given a key and because the garage door does not work. (Doc. 178, 14) The result is that the unattended property cannot be locked or unlocked. Not only has this created a safety concern, but also the parties share the worry that the property will be vandalized. (*Id.*)

Although these types of safety concerns have not yet arisen with regard to the Lowestone Road Property, the Court notes that the continued lack of cooperation from Mr. Scherer appears to have completely prevented the government from enforcing its valid lien. (Doc. 143) Moreover, legal remedies have been inadequate: the Court attempted to resolve these issues in the March 29 status conference—apparently to no avail, as they remain unresolved seven months later. (*Id.* at 23). Finally, the Court believes that imbuing the realtor with the powers of a

3

receiver will do more good than harm by enabling her to efficiently and safely liquidate the properties in question, thereby allowing the Court to proceed to the question of how the proceeds will be distributed.

Taken together, these factors suggest that the creation of a receivership is appropriate and just. Accordingly, the Court grants the government's motion to appoint a receiver.

### III.  CONCLUSION

**IT IS ORDERED** that the federal tax liens, as well as the judgments, for the liabilities of the Defendant Ronald E. Scherer shall be enforced against the real properties commonly known as 4425-4427 Lowestone Road, Columbus, Ohio 43220 (the "Lowestone Road Property") and 6015 Strome Court, Dublin, Ohio 43017 (the "Strome Court Property"), and that, under 26 U.S.C. §§ 7402(a) and 7403(d), said properties shall be sold by a court-appointed receiver in a judicially approved sale, free and clear of the interests and claims of the parties in this case and without right of redemption, with the net proceeds of sale, after the satisfaction of the direct costs of sale, to be distributed to such parties in such amount as this Court determines based on their respective interests in, and claims against, the property sold.

The legal description of the Lowestone Road Property is:

Located in the City of Upper Arlington and further described as Being Lot Number Eight of Shelbourne Heights Extension No. 5, as the said lot is numbered and delineated upon the recorded plat thereof, of record in Plat Book No. 38, Page 99, Recorder's Office, Franklin County, Ohio.

The legal description of the Strome Court Property is:

Situated in the County of Franklin, in the State of Ohio and in the Village of Dublin and bounded and described as follows:

Being Unit No. 6015 of LOCHSLEE CONDOMINIUM, as the same is numbered,

designated, delineated, and described in the Declaration and drawings thereof, of record, respectively, in Official Records Volume 760, pages B18 through D20, both inclusive, as amended by the First Amendment of said Declaration and the drawings filed in connection therewith, of record respectively, in Official Records Volume 1131, pages B07 through B16, both inclusive, and Condominium Plat Book 18, pages 69 through 75, both inclusive, all in the Recorder's Office of Franklin County, Ohio (hereinafter the "subject premises").

This conveyance and the rights hereunder of the Grantee are subject to the Provisions of Chaper 5311 of the Revised Code of Ohio and the terms and provision of the Declaration of Lochslee Condominium, the Articles of Incorporation and Bylaws of Lochslee Condominium Association and the administrative rules and regulations adopted pursuant thereto, as any of the same may be lawfully amended from time to time.

**IT IS ORDERED FURTHER** that, under 26 U.S.C. §§ 7402(a) and 7403(d), Kristie Garner, Howard Hanna RealCom Realty, 37 West Bridge Street, Dublin, Ohio 43017, (614) 793-1500, is appointed as Receiver for purposes of assisting in the enforcement of federal tax liens and the judgment in this case against the Lowestone Road and Strome Court Properties, and is directed to take custody and arrange for the sale of the two properties.  Defendant Ronald Scherer shall provide Ms. Garner with the keys and access codes for the properties.  Mr. Scherer shall provide Ms. Garner with any other information necessary and/or useful to her role as Receiver.  At Ms. Garner's request, Mr. Scherer shall complete any disclosure statement required for the listing or sale of the properties.  In respect to the receivership of said properties:

1. Ms. Garner shall have the authority to, and is directed to, arrange for the sale of the Lowestone Road and Strome Court Properties subject to approval by this Court after notice to the parties to the case.  The United States shall be required to prepare and file the motion papers necessary for a sale arranged by the Receiver to be approved and closed and for an order of distribution of the net proceeds of sale to be entered.  The initial listing price may be set by the United States in consultation with the Receiver.  Notice of the initial listing price shall be provided to the parties to the case.  If a party to

5

the case with an interest in the property objects to the initial listing price, they may seek review by motion to the Court within three days of the issuance of notice. If lack of buyer interest or buyer feedback indicates that the listing price is too high, the United States, in consultation with the Receiver, may lower the listing price (and, again, if a party to the case with an interest in the subject property objects to the new listing price, they may seek review by motion to the Court within three days of the issuance notice). The United States shall have the authority to authorize the Receiver to accept an offer and/or to decide what counter-offers, if any, the Receiver shall make in response to an offer. However, the final acceptance of an offer requires the approval of the Court. The terms of any purchase agreement shall include an appropriate cash deposit and the balance of the purchase price paid in cash or certified check at closing, with the amount of such deposit to be approved by the United States, forfeitable upon the purchaser's failure to perform. Any forfeited earnest money proceed shall be distributed to the United States for application to Mr. Scherer's tax liabilities, except to the extent the United States agrees that such monies may be used for maintenance, repairs, and/or improvements. A purchase agreement may include other customary and reasonable terms in the discretion of the United States, in consultation with the Receiver. As indicated above, a closing shall not occur until after the sale has been approved by further order of this Court. At closing, the purchaser or purchasers shall receive a Receiver's Deed to the real property that they purchased executed by the Receiver that shall be free and clear of the interests or other claims of all parties to this action with the same to attach the proceeds in the same order of priority as they have against the property.

2. Ms. Garner shall have all of the rights and powers necessary to fulfill her obligations

under this Order, specifically including, but not necessarily limited to, the power to enter the Lowestone Road and Strome Court Properties, to inspect the properties, to advertise the sale of the properties, to show them to prospective buyers, to assure, and if necessary make from the Receiver's funds, the payment of real property taxes, water, and sewer charges or fees for the properties, and to make expenditures of the Receiver's funds that are first approved by the United States for reasonable and necessary repairs, maintenance, and minor improvements, and to take any action reasonably necessary to protect and preserve the value of the properties prior to sale, and to put it into salable condition, including, but not limited to, the purchase of property and liability insurance.

3. To the extent that Ms. Garner, with the approval of the United States, expends any funds of her own agency for the purposes detailed in the preceding paragraph, the Receiver shall be entitled to recover the same from the proceeds of any sale of the properties with priority over the claims of all parties, including the United States, with the sole exception that any real property tax liens shall have priority over any claim for such expenditures.

4. Ms. Garner shall be (a) compensated from the proceeds of the sale of the Lowestone Road Property and from the proceeds of the sale of the Strome Court Property in an amount equal to six percent of the gross sale proceeds from which she must pay any buyer broker commission and (b) reimbursed for her reasonable and necessary expenditures under paragraph 2 above that were first approved by the United States. At closing, the Receiver shall receive payment of the above-described compensation and reimbursement from a distribution from the proceeds of a sale approved by the Court, as a direct cost of sale, and before any net sale proceeds are used to pay the claims of parties to this action.

5. The cash deposit of the buyer shall be held by the Receiver.  She shall provide the deposit at or shortly before the closing for the sale to Talon Title, 570 Polaris Parkway, Suite 140, Westerville, Ohio 43082, (614) 818-0500, the title company serving as the escrow agent and handling the closing for the sale. In addition to handling the closing, Talon Title shall hold the net proceeds remaining after the payment of the direct costs of the sale of the Strome Court Property in escrow, pending the entry of an order of distribution by the Court, and it shall distribute the net proceeds in accordance with an order of distribution by the Court.

6. After the closing of the sale of the Lowestone Road Property and after the closing of the sale of the Strome Court Property, the United States shall file respective requests for an order of distribution of the net sale proceeds, which shall propose which person and/or entities shall receive payment from the net proceeds and the amount each person and/or entity shall receive.

7. This order supersedes all previous orders governing the sale of the Lowestone Road Property and the Strome Court Property.

**IT IS SO ORDERED.**

    **s/ Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  November 1, 2017**